## Richmond.

Tidball and Others v. Shenandoah National Bank.

December 6, 1900.

1. Chancery Practice—*Negotiable Paper—Notice of Dishonor.*—Notice of dishonor is a necessary charge in a bill to subject a decedent's estate to liability as endorser of negotiable paper.

2. Chancery Practice—*Negotiable Paper—Parties.*—Persons primarily bound on negotiable paper are necessary parties to a suit in equity to subject the estate of an endorser, as they may have defences unknown to the endorser, and, being first liable, equity will not, except. under special circumstances, subject the estate of an endorser until that of the principal has been exhausted.

3. Chancery Practice—*Exhibits—Notice of Dishonor—Certificate of Protest.*—A charge in a bill that a defendant endorsed certain notes, and that " said notes are· filed " as exhibits with the bill, does not make the certificates of protest annexed to the notes parts of the bill, and is not a sufficient allegation of dishonor to charge the endorser.

4. Chancery Practice—*Demurrer—Amendment.*—When a demurrer is interposed to a bill, but the court can see that the defect pointed out can be remedied, and that substantial justice requires that it should be done, it will allow the complainant to amend, so as to remedy the defect.

Appeal from a decree pronounced by the Circuit Court of Frederick county, at its March term, 1900, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Holmes Conrad,* for the appellants.

*R. E. Byrd,* for the appellees.

PHLEGAR, J., delivered the opinion of the court.

In January, 1881, the Shenandoah ·Valley National Bank instituted, in the Circuit Court of Frederick county, a general creditors' suit against the executor and devisees (two of whom were infants) of Edward M. Tidball, deceased. The bill alleges "that Edward M. Tidball, deceased, died indebted to your orator by three several negotiable notes, as follows, drawn by James Marshall "—and then proceeds to describe each note particularly. It alleges that each note was protested at maturity. It then says: " Said notes are filed herewith as exhibits 'A,' 'B,' and 'C.' " Nothing is said about notice to the endorsers or about certificates of protest. It appears from the descriptions that only one of the notes was executed by James Marshall; that another was executed by Mary T. Magill, and endorsed by James Marshall and Edward M. Tidball, in the order named, and that the other was executed by James H. Burgess.

The bill exhibits the will of Mr. Tidball, which directs his executor, Holmes Conrad, to sell all his estate, real and personal, with the exception of some minor personal articles, and that "the proceeds arising from both sales, after the payment of funeral expenses and just debts, be disposed of as follows." The disposition was to the widow and children, in ways not material to this opinion.

Neither James Marshall, Mary T. Magill, nor James H. Burgess were parties to this suit. ·

The infants answered by guardian *ad litem,* disclaiming any knowledge of the matters alleged in the bill, and calling for proof thereof.

At the November term, 1882, a decree was entered bringing the cause on to be heard on the bill and exhibits, duly taken for confessed, against all the adult defendants, the answer of the infants by their guardian *ad litem,* general replication thereto

and argument of counsel, and directing one of the commissioners of the court to give notice of the time, place, and purpose, by publication in a newspaper in Winchester, "and by such advertisement to convene all the creditors of E. M. Tidball to prove their claims before him." The decree then provides that the commissioner shall ascertain the assets and liabilities of the estate, settle the accounts of the executor, "and he shall audit all debts due by the estate *which may be produced,* stating any that are secured by liens," etc.

This decree was executed by Commissioner L. N. Huck, who returned his report in 1883, showing that the executor had collected and disbursed the personal assets of the estate, and that the estate was indebted to him in a small amount.

The report says: " The only debt produced to the commissioner to be audited is a judgment  *  *  *  in favor of the Union Bank of Winchester against E. M. Tidball's executor for $1,000," etc. No reference is made to the claims asserted in the bill.

At the November term, 1883, the following decree was entered: " This cause came on to be heard this 23d day of November, 1883, on the papers formerly read, and the report of Commissioner L. N. Huck, with a settlement of the accounts of Holmes Conrad, executor of Edward M. Tidball, deceased, to which there are no exceptions. On consideration whereof it is adjudged, ordered and decreed that the report be confirmed, and the settlement of the accounts of the executor be approved and confirmed."

Nothing more was done in the cause until November term, 1896, when, on motion of the plaintiff, leave was given to file its petition, which was accordingly done, and process to answer the same was directed to issue.

The petition asked that the decree of November term, 1883, be reheard and set aside; that Commissioner Huck's report be recommitted to one of the commissioners in chancery to restate

the same; that the claims alleged in the bill be paid from the assets which were, or should be, in the executor's hands, or from those which had been paid to the legatees or devisees.

The petition alleged that if the decree is an adjudication against its claims, "it is erroneous on its face, because excluding a claim from audit, on the ground that it was not produced to be audited when it had already been produced for audit in the most formal way by the exhibit of the bill." It also alleged certain matters in connection with the executor's accounts, which it claimed were errors apparent on the record, and which it sought to have corrected. It alleged various reasons why the decree had not been sooner questioned, and why the suit had been permitted to remain dormant for so many years, but as the sufficiency of those reasons is not now to be passed upon, it is unnecessary to recite them.

At the May term, 1897, the executor, widow, and surviving child (one having died) objected to the filing of the petition, and filed their demurrers and answers thereto, and the cause was submitted for decree in vacation. The answers deny some of the reasons for delay assigned in the petition, and insist strenuously that the claims are barred by the decree of 1883, and the laches of the plaintiff, but they do not deny that Edward M. Tidball's estate was originally bound for the debts, or claim that they have been paid, except, as the petition admits, certain payments, which have been made by the principal debtors, or their representatives.

A decree was entered May 12, 1897, refusing to rehear the decree of November, 1883, so far as it settled the accounts of the executor, but rescinding it so far as the confirmation of the report was supposed to affect the plaintiff's claims, and directing one of the commissioners of the court to ascertain and report the unpaid debts of E. M. Tidball, deceased, and especially what balance is due complainant as alleged in its petition, and to make such further settlement of the accounts of the executor

as might be proper. This decree gave the executor leave to·
answer the original bill.

John M. Steck, one of the commissioners of the court, took
the accounts and reported to the June term, 1899, that the·
balance due the complainant is $3,180.59, and that no other·
unpaid debts of Tidball's. estate have been brought to the com-
missioner's notice. He returned the evidence, on which he·
acted, with his report.

The executor and devisees excepted to this report, on the
ground that the debts were "barred by laches and the presump-
tion of payment." No other exception was made.

At the March term, 1900, the executor and the widow filed
their demurrers and answers to the original bill. Neither answer
is under oath.

The executor neither admits nor denies his testator's liability,
but calls for full and explicit proof thereof, and concurs in the
prayers of the bill for the accounts prayed to be taken, and that
the further administration of the estate proceed under the
direction and decrees of the court.

The widow, in her answer, made no reference to the plaintiff's
claims, and concurs in the prayer for accounts and for the
administration of the estate under the direction of the court.

At the March term, 1900, the court overruled a motion made
by the executor to rehear the decree of May, 1897; overruled
demurrers to the bill and the exception to Commissioner Steck's
report; refused to decree against the executor on account of the
personal estate which he had disbursed; confirmed Commis-
sioner Steck's report, and decreed that, unless the balance
shown to be due the complainant by Commissioner Steck's report
and the costs of suit were paid within sixty days, the executor
should sell the real estate devised to him by the testator.

From this decree an appeal was allowed the widow, Mrs..
Susan W. Tidball.

The errors assigned are:

First. Overruling the demurrer to the original bill.

Second. Overruling the demurrer to the petition for review.

We are of opinion that the first assignment of error is well made.

The bill and notes filed show that Mr. Tidball was only an endorser. He was not liable, unless the notes were properly dishonored, and due notice thereof given him or his executor.

In *Duerson's Admr.* v. *Alsop et als.*, 27 Gratt. 229, Judge Staples, on page 243, quotes from Lord Denham: "The endorser contracts to pay the bill, not primarily or absolutely, but on two conditions—one, the dishonor by the drawee or acceptor; the other, the due notification to him of such dishonor."

If the endorser is not liable unless he has notice of the dishonor, it is evident that the bill does not state a good cause of action, because it fails to allege such notice.

It is claimed that the notaries' certificates of protest and notice became parts of the bill as exhibits "A," "B," and "C," and they are brought here from the files of the papers of the cause. We do not think that the expression "said notes are filed" embraces the notices of protest.

The bill is defective because the original debtors are not parties. They should be so for two reasons—first, they may have some ground of defence—for instance, payment, release, off-set, etc., which is unknown to the endorsed; second, being first liable, equity will not subject the estate of the endorser until the principal has been exhausted, except under special circumstances. *Horton* v. *Bond*, 28 Gratt. 816; *Duerson's Admr.* v. *Alsop et als.*, 27 Gratt. 229. The demurrer should have been sustained, with leave to amend the bill.

It is due the circuit judge to say that counsel stated in argument here that his attention was not called to these defects in the bill.

The question next to be determined is, what becomes of the proceedings which have been had on this defective bill?

" On hearing the demurrer, the court will, when it sees that the defect pointed out by the demurrer can be remedied by amendment, and substantial justice requires it, make a special order, at the hearing of the demurrer, adapted to the circumstances of the case." 1 Dan. Chy. Pr. (5th ed.), 598.

It is easy to see that the defects in the bill can be remedied by amendment, if the facts justify it. That there has never been any denial by any of the defendants that E. M. Tidball's estate was bound when the suit was brought (the notes were all protested after his death, and the fact of notice or of failure to give notice was within the personal knowledge of the executor), the form of the exception to Commissioner Steck's report, the probability, to say the least of it, that the certificates of protest are a part of the evidence returned with that report, the injustice that would be done the executor if the settlement of his accounts, which was confirmed in 1883, should now be set aside, and the concurrence of both the executor and widow in the prayer for accounts satisfy us that substantial justice requires that the decree of November, 1883, as hereinafter construed, and the decree of May 12, 1897, should not be interfered with; that the decree of March term, 1900, should be set aside, and that after the bill is amended, each party should be allowed to file exceptions to the report of Commissioner Steck, and to take further evidence, if desired.

The decree of November, 1883, does not adjudge that the complainant has no claim against the estate of Edward M. Tidball. It confirms the report and nothing more. The report must be read with the decree to ascertain what was confirmed. The report was, "the only debt produced to the commissioner to be audited is" the judgment in favor of the Union Bank of Winchester. The matter confirmed was that no other debts were produced to the commissioner. In *Coleman* v. *Stone's*

*Ex'or*, 85 Va. 387, Coleman proved one debt before a commissioner and withheld another. The report was confirmed and the proven debt paid from a sale of real estate. Ten years afterwards, he was permitted to prove the debt he had withheld. If the confirmation of the first report was an adjudication that Coleman had no other claim, he could not have been allowed to prove the last claim.

Nothing herein is intended to intimate an opinion on the defence of laches, upon which the appellant relies. That is a question which must be again heard in the Circuit Court when the pleadings have been amended and such other evidence taken as the parties can produce.

The cause will be remanded to the Circuit Court of Frederick county to be proceeded with in accordance with this opinion.

*Reversed.*