# Richmond.

## FIDELITY LOAN AND TRUST CO. v. ENGLEBY AND OTHERS.

### JANUARY 31, 1901.

1. CONTRACTS — *Novation— Change of Securities — Marking "Paid."*— Whether or not a debt has been novated is a question of fact depending upon the intention of the parties. In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness; such new evidence, in the absence of an intention, express or implied, being treated as a conditional payment merely. A mere change of securities of equal dignity is not a novation, unless plainly so intended by the parties; nor is the change of position of parties on the paper. Marking an old note "paid," when a new note is given, is not, standing alone, a controlling circumstance to show novation, especially when this is the custom of the parties in such transactions.

2. CONTRACTS—*Novation—Burden of Proof.*—Those who rely upon a satisfaction and discharge of the original debt by the creation of a new obiglation must make it clear that the intention of the parties was to extinguish the original debt and create a new one.

3. TENDER—*Conditions.*—Tender of payment of a debt conditioned on the surrender of collaterals held for that and other debts, is not a good tender.

4. CHANCERY PRACTICE—*Suit Against Endorser—Parties.*—The maker of a note is a necessary party to a suit in chancery to subject the lands of the endorser, and, in order to charge the endorser, it is necessary to aver and prove dishonor by the maker, and notice thereof to the endorser.

5. HUSBAND AND WIFE—*Use of Wife's Property—Presumption.*—Where the husband has been permitted to use the separate estate of his wife as his own, the law presumes a gift, and, in a contest with his creditors, the burden is on the wife to show that the original transaction was a loan, and that there was a contemporaneous agreement on the part of the husband to repay it.

Appeal from a decree of the Circuit Court of Roanoke county, pronounced May 19, 1900, in three chancery causes heard together, in each of which the appellant was the complainant, and one or more of the appellees were the defendants.

*Reversed.*

The opinion states the case.

*William Gordon Robertson,* for the appellant.

*Thomas W. Miller, Scott & Staples* and *Moomaw & Wood,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The question presented by the petition for appeal grows out of two suits heard together, which were instituted by the appellant bank; one to set aside a deed dated July 11, 1894, from Thomas Engleby, conveying to his wife, Elizabeth Engleby, several lots of land in the city of Roanoke, upon the ground that said deed was voluntary and without consideration, and made to hinder, delay and defraud the creditors of the grantor; and the other to set aside, upon like grounds, a deed from John Engleby, dated September 5, 1894, conveying to his wife, Sarah Engleby, a certain house and lot in the same city.

The charge of fraud is not sustained. It does, however, appear that the conveyances mentioned were voluntary and without consideration. The sole question raised by the appellant is, whether or not the debt constituting the basis of a certain judgment asserted by it, was contracted prior to the date of the deeds assailed, and if so, whether or not said debt has been paid off or discharged; the Circuit Court having held that the debt in question was not prior in time or right to either of said deeds.

It appears that, on the 18th of December, 1893, appellant discounted two negotiable notes, each for the sum of $4,350.00,

at four months, drawn by the Cloverdale Iron and Land Company, and endorsed by Joseph T. Engleby, John Engleby, Thomas Engleby and Henry Body. At the same time, the Cloverdale Iron and Land Company executed a deed of trust conveying certain real estate to a trustee to indemnify and save harmless its endorsers. These notes were renewed from time to time, without change as to maker or endorsers, until June 21, 1895, when the debt was continued in the form of a negotiable note for $8,685.00, made by the four endorsers, as principals, with collateral; and the original notes stamped paid by the appellant, and surrendered. On July 29, 1895, the trustee sold the property conveyed in trust to indemnify the endorsers, and it was knocked out to Thomas Engleby and Henry Body, two of the endorsers, who immediately transferred their bid to the Cloverdale Farming and Mineral Company, to which last named Company a deed was made by the trustee. On the 19th of August, 1895, the note for $8,685.00, dated June 21, 1895, was surrendered, and the debt continued in the form of four notes for $2,171.00 each, at four months. One of these notes was made by Henry Body and endorsed by Emelyne Body. The other three were made, one by Thomas Engleby as principal, with the Cloverdale Farming and Mineral Company, John Engleby and Joseph T. Engleby as endorsers; another by John Engleby as principal, with the same company, Thomas and John Engleby as endorsers; and the third by Joseph T. Engleby as principal, with the same company, Thomas and John Engleby as endorsers. On the 22d of August, 1895, the Cloverdale Farming and Mineral Company conveyed to a trustee the same lands sold under the first deed of trust, to secure to the appellant "a debt of $8,684.00," evidenced as stated in the deed of trust, by the four notes already described of $2,171.00 each. The note given by Henry Body was subsequently paid, and the notes executed respectively by the three Englebys, after being twice

renewed, and curtailed to $2,145.72 each, were reduced to the judgment for $6,437.16 now asserted in the bills filed by appellant.

The trustee sold the lands under the second deed of trust, dated August 22, 1895, and the proceeds applicable thereto were duly credited upon this judgment.

From the foregoing recital of its history, it is perfectly clear that the debt, embraced in the judgment here asserted, had its origin in the obligation entered into by the appellees, Thomas and John Engleby, on December 18, 1893, prior to the date of the deeds assailed as voluntary. The contention, however, of appellees is that, after the deeds were made, the original debt was novated, and therefore satisfied so far as any right had existed to assert the same against the property conveyed to their wives.

Whether or not a debt has been novated is a question of fact, and depends entirely upon the intention of the parties to the particular transaction claimed to be a novation. In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness; such new evidence, in the absence of an intention expressed or implied, being treated as a conditional payment merely. In *Barnett* v. *Miller's Adm'r*, 23 Gratt. 551, which was an action at law upon a bond for $800.00, dated September 20, 1862, the defence was made that it was a Confederate transaction, and should be sealed. It appeared that the plaintiff had held the bond of Giles Barnett for $700.00 before the war, and that, at the date of the bond sued on, she refused to receive the principal, and, at the suggestion of the parties, added $100.00 of Confederate money thereto, and took the bond of Charles T. Barnett as principal with Giles Barnett, who did not want the money longer, as surety. The grounds on which it was contended that the whole was a Confederate debt, were: That a new bond

was taken for the whole amount, including the $100.00 loane'd at the time; that the new bond was executed by two obligors, whereas the old one was executed by one; that when the new bond was executed the old one was surrendered; that Giles Barnett was the only debtor for the original debt, whereas Charles T. Barnett was the principal debtor and Giles Barnett only surety for the new debt; and that while Giles Barnett originally owed a specific de'bt, yet Charles T. Barnett received Confederate money only as the consideration of the bond executed by him as principal. The court held that these circumstances did not constitute a novation of the debt, but' that it retained its original character; and as to $700,00 was to be paid in full, and as to $100.00 it was to be scaled.

The case of *Coles* v. *Withers*, 33 Gratt. 186, was a suit brought to enforce a vendor's lien. It appeared that several years after the date of the deed the vendee executed his bond with sureties to the vendor for all of his inde'btedness, amounting to $10,630.50, which included the vendor's lien, amounting to $3,564.00. The vendee afterwards died, leaving his entire estate to his wife who subsequently married, and she and her second husband sold and conveyed a large tract of land, which included the land upon which the vendor's lien in question had been reserved. The husband had another settlement with the original vendor, taking up the bond for $10,630.50, and giving her his bond for the balance of $4,123.00, upon which bond he confessed judgment. The court held that these circumstances did not constitute a novation; that the vendor's lien was a security not for the bond, but for the debt; that the surrender of the bond could not extinguish the debt, and the lien for its payment, without a manifest intention to do so by the vendor, and the burden was on the purchaser to show such intention; that a mere change of securities of equal dignity was not a novation of a debt unless plainly so intended by the parties.

The principles applicable to this class of cases are discussed at some length in the case of *Morris* v. *Harveys and Williams,* 75 Va. 726, relied on by the appellees. Judge Staples, in discussing the question, does employ illustrations to show what might, under some circumstances, amount to a novation, which, if taken separately, would seem to give some countenance to the contention of appellees, but the opinion taken as a whole does not justify the construction sought to be placed upon it. In that case, it appeared that a certain judgment had been fully satisfied and discharged by the terms of a subsequent settlement, and the question was whether that amounted to a novation of the debt upon which the judgment was founded. Judge Staples says: " It seems to me that if the judgment is to be regarded as satisfied the debt must be considered as also satisfied. As will be hereafter seen, the general rule applying in all this class of cases is that the debtor's own note does not operate as a payment of an antecedent debt, unless intended by the parties. In the absence of such intention, expressed or implied, the note is treated as a conditional payment merely, that is when actually paid. If the debt has passed into a judgment the same rule applies." Again, Judge Staples says: " The learned judge of the Chancery Court has declared that neither the judgment nor the substitution of other securities will prevent a court of equity, where a deed is sought to be impeached as voluntary, from looking to the original cause of action, in order to ascertain whether it was a subsisting debt, contracted at the time the deed was made. The correctness of that proposition will not be controverted; but, where the rights of third persons have intervened, as in the case of a settlement upon a wife and children, it is certainly competent for them to show that not only the judgment, but the debt upon which it is founded, has been satisfied and discharged by the substitution of a new security." In a subsequent paragraph the learned judge says: " I am free to

admit that generally the courts are reluctant to treat the new note as a satisfaction, where the effect will be to deprive the creditor of a subsisting lien. But where, as in this case, there is a judgment, and the parties by unmistakable acts and declarations show that they consider the judgment satisfied and extinguished, there is less difficulty in treating the debt represented by the judgment as also satisfied."

The result of this case, and of all the authorities, is that those who rely upon a satisfaction and discharge of the original debt, must make it clear that the intention of the parties was to extinguish the original debt and create a new one.

In the case at bar, William F. Winch, who is the secretary and treasurer of the appellant banking institution, and who had been one of its directors from the date of its organization, gives a clear history of the indebtedness in question from its inception, as shown by the successive cotemporaneous entries on the books of the bank. He testifies positively that the notes finally embraced in the judgment asserted represented the balance due on the original debt dated December 18, 1893, and that they, as well as the intermediate notes taken, were accepted and treated, not as a payment and discharge of the original debt, but as successive renewals thereof. In referring to the deed of trust given by the Cloverdale Iron and Land Company to secure the original notes and to the sale made thereunder he states distinctly that the paper was carried in the bank as past due until the reorganization of the company, when it was again renewed, and secured as the same debt, upon the same property.

Joseph T. Engleby, who was the president of the appellant bank at the time of the transaction in question, and also of the Cloverdale Iron and Land Company, and afterwards of its successor, the Cloverdale Farming and Mineral Company, and one of the parties to the original notes, and the subsequent notes, with the fullest opportunity to be cognizant of the facts, speak-

ing for the appellees in securing the discount and renewal of the notes, testifies in the case, and does not pretend to deny or question the emphatic statements of William F. Winch upon the important and controlling point covered by his testimony. It is true, as contended, that the record discloses that the securities given for the debt in question were changed; that the endorsers of the original notes became the principals in the succeeding notes given in renewal; that the Cloverdale Farming and Mineral Company became party to the notes in the place of the Cloverdale Iron and Land Company, and that the old notes were surrendered and stamped paid by appellant. These changes, however, appear to have been a mere shifting of securities, more nominal than real. While the fact is not fully established by direct proof, yet, if any presumptions are to be derived from the conduct of men, it may be fairly inferred from the record that the parties controlling and chiefly interested in the Cloverdale Iron and Land Company were the four endorsers on its original notes discounted by appellant, and that its successor, the Cloverdale Farming and Mineral Company was the same concern under a new name. It appears that the original stockholders of the latter company were Thomas Engleby, John Engleby, Joseph T. Engleby, and W. R. Engleby; that Joseph T. Engleby was president of both companies, and that the land held by the first company, when sold by the trustee, was immediately transferred to the latter without a dollar being paid from the proceeds of sale on the debt secured appellant; the receipt of the appellant being given for its proportion of the proceeds of sale merely to enable the trustee to settle his accounts; a deed of trust being given at the time on the same land in the hands of the new company, to secure the same debt that was secured thereon, while it stood in the name of the old company. If, however, these two companies were not in fact the same, under the authorities cited, and in view of the other evidence

in the case, the changes relied on would be regarded as a mere shifting of securities, and not sufficient to show a novation of the debt.

The fact that the word "paid" was stamped on the old notes, when surrendered, is not, standing alone, a controlling circumstance, especially when, as in this case, it is shown to be the custom of the bank to stamp the word "paid" on the old note when a new note is given for the debt.

Upon the whole case, we are of opinion that the debt represented by the judgment in question was contracted December 18, 1893; that the original debt has not been novated, and that said judgment is a lien upon the lands in question prior in time and dignity to the deeds assailed by appellant.

Under Rule IX. appellees assign a number of errors, which will now be briefly considered.

The first assignment of error is the action of the court in dismissing in the cross-bills filed by appellees, and not allowing upon the judgment in question, the credits claimed therein. The case set up by these cross bills was that, when the lands were sold under the deed of trust from the Cloverdale Farming and Mineral Company, dated August 22, 1895, it was understood between the appellees and the purchasers, who were the National Exchange Bank and the appellant, and to whom the property was knocked out at $4,000.00, that if opposition to the sale was withdrawn by the appellees, the purchasers would agree to give them credit on their debt for the difference between the $4,000.00 and $6,000.00, if Joseph T. Engleby would furnish a purchaser at the latter sum within thirty days; and that a purchaser at $6,000.00 had been obtained within the time prescribed. It appears that a proposition embodying the alleged agreement was submitted to two of the directors of the appellant, but the evidence shows that no such agreement was ever consummated; that the proposition was not only never accepted

by appellant, but was never submitted to its board of directors for consideration. The evidence wholly fails to sustain the case stated in the cross-bills, and they were therefore properly dismissed.

The second error assigned is the action of the court in holding that there was a balance due upon a certain note for $2,500.00 asserted by appellant, and that the same was a lien upon the lands conveyed to Sarah Engleby by her husband. This note for $2,500.00 was executed by John and Joseph Engleby, partners as Engleby & Brother, on the 18th day of April, 1893, and subsequently renewed; the decree appealed from showing the balance now due thereon to be $885.00, with interest from July 15, 1897. Without prolonging this opinion to discuss in detail the evidence bearing upon this controversy, it is sufficient to say that the books of the bank, together with other evidence, clearly show that there was no error in the conclusion reached with respect to this matter.

Third. It is insisted that the court erred in holding that a certain debt, evidenced by the note of W. R. Engleby for $285.00, endorsed by Engleby & Brother and Thomas Engleby, was a lien upon the property in question, and that the same bore interest from November 6, 1897. The ground of this contention is, first, that the bills filed by appellant do not allege that the notice of non-payment of this note was given to appellees, nor that notice was waived; and that W. R. Engleby, the maker, was not made a party to the suits. And, second, that the payment of the note was tendered at maturity and refused, and therefore no interest should be charged. As to this second contention, the evidence shows that the offer of payment was made upon condition that appellant would surrender a collateral which had been put up with the note. This demand appellees had no right to make, the obligation showing on its face that the collateral was deposited to secure other liabilities than the $285.00. It was,

therefore, not a proper tender, and there was no error in allowing the interest complained of.

With respect to the first ground relied on in support of this assignment of error, it is to be observed that when these suits were brought the note for $285.00 was not due, and the allegation of dishonor and notice of protest could not have been then made. Inasmuch, however, as the endorser contracts to pay the note, not primarily or absolutely, but on two conditions, one, the dishonor by the maker, and the other, the due notice to him of such dishonor, these essentials, necessary to bind the endorser, should have been made to appear in the case after the note was due and before decree against him. It appears that the bills are defective in not having made the maker of the note a party to the suits. As said by Judge Phlegar in the recent case of *Tidball* v. *Bank*, 98 Va. 768, this should have been done for two reasons: first, the maker may have some ground of defence, such as payment, release or offset, which is unknown to the endorser; second, being first liable, equity will not subject the estate of the endorser until that of the principal has been exhausted, except under special circumstances.

As the decree of the lower court is to be reversed for the error set forth in the petition for appeal, the causes will be remanded with leave to appellant to file amended and supplemental bills, making the necessary additional parties, and the necessary allegations with respect to the dishonor and protest of this note, and notice thereof to the endorser. *Tidball* v. *Bank*, *supra*.

The fourth assignment of error relates to a note of $640.00 made by Engleby & Brother, and endorsed by Thomas Engleby. The point is made with respect to this note, that the bill does not allege its dishonor, protest, and notice thereof to the endorser. What has been said upon this subject in considering the third assignment is all that need be said. The necessary allegation with respect to this note can also be made when the amended and supplemental bills, already indicated, are filed.

The fifth error assigned is that the court failed to allow a credit upon the judgment asserted by appellant for the real value of certain collaterals deposited by appellees with the notes upon which the judgment was obtained.

It is sufficient to say that the lower court has not decided this controversy, but has, in the decree appealed from, expressly left the question open for future determination, when properly raised by the pleadings.

The sixth assignment of error, which is to the action of the court in holding the deeds in question to be voluntary, has already been disposed of in the beginning of this opinion. The appellees failed to show that a consideration deemed valuable in law was given by the wives of Thomas and John Engleby respectively, for the properties conveyed to them. The claim is that the consideration for the deeds was money due to the wives which had been theretofore collected and used by the husbands under a promise to repay the same. It is not clear from the evidence what money, belonging to the wives, passed into the hands of their husbands, and no cotemporaneous contract to repay any sum is shown. In such cases, the law presumes a gift, and the burden is on the wife to show that the original transaction represented a loan, and that there was a cotemporaneous promise on the part of the husband to pay the debt. *Flynn* v. *Jackson*, 93 Va. 341; *Spence* v. *Repass*, 94 Va. 716.

For these reasons, the decree complained of must be reversed, and the causes remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*