## AVOCET DEVELOPMENT CORPORATION AND ANDREW J. SERAFIN

### V.

## THE MCLEAN BANK

Record No. 840977

January 15, 1988

Present: All the Justices

Michael A. Mays for appellants.

Douglas D. Walker (Henry C. Mackall; Mackall, Mackall, Walker & Silver, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In 1977, Andrew J. Serafin, president and sole stockholder of Avocet Development Corporation (Avocet), and a practicing attorney in Washington, D.C., first borrowed money for Avocet from The McLean Bank (the bank). Because the bank considered Avocet a "corporate shell" with limited assets, the bank and Serafin agreed that Serafin and his wife would personally endorse all of Avocet's notes, and Serafin would pledge savings accounts he and Avocet had in the bank to secure the payment of the notes. Until the spring of 1981, Avocet renewed the notes every 90 days. In each instance, the bank marked the prior note "Paid by Renewal" and returned it to Avocet. However, despite the agreement between Serafin and the bank, Serafin and his wife did not personally endorse each renewal note, and in July of 1981 he withdrew most of the money from the pledged savings accounts.

In the fall of 1981, Avocet delivered two notes renewing the two notes it then owed the bank. The first note, dated March 20, 1980, was in the amount of $56,455, and the second, dated May 27, 1981, was in the amount of $81,000. Avocet also delivered checks reducing the principal of the $56,455 note and paying the interest on both notes. The bank retained the checks and all four notes. Despite requests from the bank, Serafin refused to endorse any of the renewal notes, or to return the amount withdrawn from the savings accounts. In February, 1982, the bank filed this action against Avocet, Serafin, Serafin's wife, and Ronald L. Keaton, an Avocet corporate officer.

In the first two counts of the motion for judgment, the bank sought to recover the unpaid balance on both notes, attorney's fees, and interest against Avocet, Serafin, and his wife. The third count charged Mr. and Mrs. Serafin with fraud in failing to endorse the renewal notes, and the fourth count charged them with the conversions of the savings accounts by their withdrawals. The fifth count alleged the Serafins and Keaton, as officers, directors, and agents of Avocet, were personally liable for conducting the business of Avocet in Virginia in violation of former Code §§ 13.1-102 and 13.1-119.

Avocet and Serafin filed counterclaims, which the trial court severed for later trial. During a jury trial, the bank took a nonsuit as to Mrs. Serafin and Keaton, and the trial court struck the evidence on the fifth count.

The jury returned verdicts against Avocet and Serafin on the notes. The trial court entered judgment for $126,068.57, representing the principal balance due on both notes,[1] with interest, plus attorney's fees. The jury also returned verdicts against Serafin on the count for conversion in the sums of $16,000 compensatory damages and $1.00 punitive damages upon which the trial court entered judgment. The jury returned a verdict for Serafin on the fraud claim.

The primary issues on this appeal by Avocet and Serafin are whether:

(1) The bank discharged Avocet from liability upon earlier notes by accepting Avocet's renewal notes and payments of principal and accrued interest on both notes.

(2) Serafin was personally liable on the Avocet renewal notes, even though he had not endorsed them.

(3) Serafin improperly withdrew the money from the savings accounts he had pledged to secure the Avocet notes.

In accordance with well-established appellate principles, we view the evidence in the light most favorable to the bank,[2] the prevailing party at trial.

On December 1, 1979, Avocet signed, and Serafin endorsed, the first in a series of notes for $81,000. This first note in the series was a consolidation of a number of notes Avocet had issued to the bank in smaller amounts beginning January 31, 1977, all but one of which Serafin had personally endorsed. The bank and Serafin agreed his personal liability extended to all renewals of the smaller notes, as well as to renewals of the indebtedness of $81,000.

On December 24, 1979, Avocet executed a 90-day note, personally endorsed by Serafin, and Avocet received $59,455 from the bank. Serafin agreed to remain personally liable on the loan, and the parties contemplated renewal notes and possible reductions of principal every 90 days. Thereafter, Avocet continued to renew this loan every 90 days and paid $3,000 toward the principal, which reduced the balance on and after March 20, 1981, to $56,455.

---

[1] The parties had previously agreed upon the amount of principal due on the two notes; therefore, the jury did not decide that amount.

[2] Serafin's failure to recognize this principle has made his statement of facts in his opening brief of little value because, as he says, he is giving "[d]efendant's version of the relevant facts."

From the beginning of these loans and until the fall of 1980, Serafin, for Avocet, and either Thomas McQuade, president of the bank, or Thomas Williams, a vice president, handled the 90-day renewals of both notes. Serafin and McQuade or Williams agreed to vary the interest rates from time to time to reflect market changes in the rates but at no time did they change the endorsement requirement.[3] Serafin did not personally endorse some of these renewal notes, including those which are the subject of this action.

The bank's clerical personnel mistakenly returned to Serafin a number of documents evidencing the pledge of the savings accounts as security. Later, Serafin withdrew most of the money from the pledged savings accounts, and he refused to restore the funds upon the bank's demand.

## I. AVOCET'S LIABILITY

Avocet denies liability on the two notes which are the subject of this action, claiming that the notes were satisfied by the bank's acceptance of Avocet's renewal notes and Avocet's payment of the interest on both these notes. Avocet relies on Code §§ 8.3-603 and -605 in support of its defense. Neither statute supports Avocet's contention.

Code § 8.3-603 concerns discharge from liability on a negotiable instrument by "payment or satisfaction to the holder." Code § 8.3-605(1)(b) provides that "[t]he holder of an instrument may even without consideration discharge any party . . . by surrender of the instrument to the party to be discharged." We recently discussed both these provisions in *Gullette v. Federal Deposit Insurance Corp.*, 231 Va. 486, 490, 344 S.E.2d 920, 922-23 (1986). We held that liability on a note that a creditor retained but stamped "PAID BY RENEWAL" was not discharged even though the defendant, one of the makers of the original note, was not one of the parties who signed the renewal note, and even though additional collateral secured the payment of the original note. We pointed out in *Gullette* that the creditor had not surrendered the original note. We referred to our earlier decision of *Fidelity L. & T. Co.* v. *Engleby*, 99 Va. 168, 176, 37 S.E. 957, 960

---

[3] Serafin claimed the requirement of his endorsement was also negotiated each 90 days, but McQuade and Williams denied that this occurred. The jury believed McQuade and Williams and, therefore, we accept their version of the transaction.

(1901), in which the original notes had been marked "Paid" *and* had been surrendered, and stated that even under those circumstances the original note was not discharged. " 'In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness; such new evidence, in the absence of an intention expressed or implied, being treated as a conditional payment merely.' " *Gullette*, 231 Va. at 489, 344 S.E.2d at 922, *quoting Engleby*, 99 Va. at 171, 37 S.E. at 958.

In the present case, there was ample evidence from which the jury could have found that the presumed situation existed and that the debt had not been extinguished. Hence, we conclude that Avocet failed to overcome the presumption and that the trial judge correctly entered judgment against Avocet.

## II. SERAFIN'S LIABILITY

Serafin maintains he is no longer liable as an endorser for two alternative reasons: (1) each renewal note was the subject of new negotiations for continued personal endorsement by him and he had not agreed to act as endorser on the renewal notes, or (2) he and Williams reached an agreement releasing him from his prior commitment to endorse the Avocet notes.

Bank witnesses, however, contradicted Serafin on both these factual contentions. It suffices to say that the jury has resolved both these factual issues adversely to Serafin, and its findings are supported by the evidence. Therefore, the trial court did not err in entering judgment against Serafin.

## III. WITHDRAWAL OF SAVINGS ACCOUNTS BY SERAFIN

Serafin made four withdrawals of the pledged savings accounts in the bank on the same day in July, 1981, two totalling $56,000 from the McLean office and two totalling $44,000 from the Great Falls office. All four withdrawals were transfers from Serafin's and Avocet's savings accounts to Serafin's personal checking account in the bank. That same day, Serafin also withdrew $100,000 from his checking account in the bank and deposited it in a personal checking account he had in another bank in Fairfax.

The bank alleged that by these withdrawals Serafin converted the funds which were pledged as collateral to secure the Avocet

notes. The bank claimed compensatory damages of $100,000, the amount of the withdrawals, and an equal amount in punitive damages. The jury rendered a verdict against Serafin for $16,000 in compensatory damages and $1.00 in punitive damages.

Serafin asserted a number of defenses. First, that the release of the security was pursuant to an agreement Serafin had with Williams. Williams denied the agreement. We find that the jury's resolution of this factual issue in favor of the bank binds Serafin.

Second, that the activities of bank officers in expediting the withdrawal of the funds constituted an implied consent to the tort of conversion by such withdrawal. The trial court instructed the jury on the issue of consent to the withdrawal, and the jury found against Serafin on that issue.

Serafin sought to bind the bank to a consent induced by mistake. Serafin tendered Instruction R1, which read in pertinent part:

> If the McLean Bank by words or conduct was reasonably understood by Andrew J. Serafin to consent to his withdrawal of monies, the fact that the Bank was operating under a mistake would not prevent its consent from being effective, if Andrew J. Serafin relied upon the apparent consent and did not himself know of the mistake.

The flaw in this instruction is that Serafin based his defense on (1) his purported agreement with Williams, releasing the security, and (2) the bank's subsequent consent to withdrawal of the security. The jury found that Serafin failed to prove that any such agreement existed or that the bank consented to the withdrawal. Therefore, we conclude Serafin knew that the bank officials who assisted him in the withdrawal of the funds were acting under the mistaken belief these funds were not subject to the security agreement. The trial court correctly refused this instruction.

Finally, Serafin tendered Instruction Z5, which indicated the bank was estopped to assert its rights to the security because the bank impliedly approved his withdrawal of the $100,000. The trial court correctly refused to grant this instruction. Serafin failed to introduce evidence of several essential elements of an estoppel: (1) a material fact was falsely represented or concealed; (2) the party to whom the representation was made was ignorant of the truth of the matter; (3) the party claiming estoppel was misled to

his injury. *See Boykins Narrow Fabrics* v. *Weldon Roofing*, 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980). Under the most favorable construction, Serafin's evidence merely demonstrated that the bank may have been negligent, not that it misrepresented or concealed any facts. Also, Serafin knew of the bank's inadvertent release of the collateral, and he showed no essential change of position because of his early withdrawal of the security.

■ We hold that the trial court correctly submitted to the jury the issue of compensatory damages for conversion. We point out, however, that this award is for that part of the value of the security the jury found Serafin had converted, and the award is only collateral security for the payment of the notes. Therefore, any payment on this award should be credited against Serafin's liability as endorser of the two notes. We note the bank's attorney agreed to this during trial.

The trial court instructed the jury that the bank could only recover punitive damages for the conversion by proof of Serafin's actual malice or willful and wanton disregard of the bank's rights. Serafin maintains there was no evidence of actual malice and, therefore, that issue should not have been submitted to the jury.

■ Proof of actual malice is not required to support a recovery of punitive damages in tort cases. *See Baker* v. *Marcus*, 201 Va. 905, 909, 114 S.E.2d 617, 621 (1960). Even if the evidence was insufficient to justify the instruction on actual malice, if the jury found actual malice, such a finding subsumes a willful and wanton disregard of the bank's rights, which was fully supported by the evidence. *See Richmond Newspapers* v. *Lipscomb*, 234 Va. 277, 288, 362 S.E.2d 32, 37 (1987). We hold that it was not prejudicial error to grant the instruction on punitive damages.

## IV. SUBORDINATE ISSUES

### (A) *Separate Trial of Counterclaims*

■ Avocet and Serafin argue that the trial court should not have ordered a separate trial of their counterclaims against the bank. Those claims involved alleged wrongful attachments of Avocet's and Serafin's accounts in the bank and other ancillary matters. Rule 3:8 vests a trial court with the discretion to order separate trials of counterclaims. We find no abuse of discretion in this case.

(B) *Evidentiary Questions*

▮ (1) Although Avocet and Serafin stipulated the authenticity of the bank's ledger sheet, they objected to its admissibility at trial because the custodian could not name the various employees who posted the ledger. The bank proved that the document came from the proper custodian, that it was a record kept in the ordinary course of business, that it was made contemporaneously with the event by persons having the duty to keep a true record, and that it was relied upon by those for whom it was prepared. This was sufficient foundation for admission of the ledger in evidence. *See Sprinkler Corp.* v. *Coley & Petersen,* 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979).

▮ Additionally, Avocet and Serafin objected to the admissibility of a schedule explaining the history of the numerous notes which were the subject of this litigation. The admissibility of this demonstrative aid was within the discretion of the trial court, and we find no abuse of that discretion. *See Barber* v. *Commonwealth,* 206 Va. 241, 252, 142 S.E.2d 484, 493 (1965).

▮ Avocet and Serafin complain of a document's admission in evidence because it was illegible and not properly authenticated. Harold C. Rauner, a vice president of the bank in charge of loan administration, identified the document as a copy of a note, the original of which had been returned to Avocet. Although the copy was blurred, Rauner identified one of the signatures on the back of the note as a copy of Serafin's signature, but he could not identify the other signature as Mrs. Serafin's. Rauner's failure to identify the copy of Mrs. Serafin's signature did not affect the admissibility of the document because she was no longer a party to the action. The trial court properly admitted the copy of the note in evidence against Avocet and Serafin.

▮ (2) Three assignments of error address admission of the testimony of a handwriting expert, David Crown, who was called as a witness by the bank. The first assignment is that the bank failed to identify Crown as an expert witness or fully disclose the subject matter of his testimony, as the pretrial order required. The pretrial order and other documents do not support this assignment.

There was no reference in the pretrial order to David Crown or any expert witness. The only reference dealing with the bank's witnesses was, "Plaintiff's List of Witnesses is accepted." The list

indicated that Crown was expected to "testify as to the authenticity and genuineness of documents as well as testify to changes or alterations of other documents." There was no order *requiring* the information to be furnished, as contemplated by Rule 4:13, and the description of Crown's expected testimony fairly informed the opposing parties that he was an expert who would testify about the questioned documents.

Crown, an expert document examiner, testified that one of Avocet's corporate resolutions delivered to the bank with an explanatory cover letter from Serafin had been altered by a "cut and paste" forgery. Material in the original document had been obliterated, and new material had been typed in its place. Serafin represented that a photocopy of the altered document was a copy of the original document, "with the corporate name and address typed in." Crown testified that the address of the corporate office had been *altered* to show it as being in Maryland on the copy Serafin supplied. The original document showed that address as being in Virginia. In contrast, Serafin's testimony was that either he or a secretary at Avocet had typed in the address on the blank space provided on the form.

The location of the corporate office was material because Serafin had testified as an adverse witness earlier in the trial that the corporation was not doing business in Virginia and, thus, was not in violation of former Code § 13.1-119. Under this Code section, had Avocet conducted business in Virginia without authority to do so, Serafin would have been personally liable on the notes as an officer and director of a foreign corporation. Before Crown was called as a witness, the trial court sustained Serafin's motion to strike the bank's evidence on this claim.

In the remaining two assignments of error, Serafin claims the trial court erred in admitting Crown's testimony on the ground that the location of Avocet's corporate office at the time it adopted the resolution was no longer an issue in the case. The trial court correctly ruled that the evidence went to Serafin's credibility as a witness. While Serafin argues that this was an improper method of impeaching him as a witness, it is clear that a witness may be impeached by proof of prior statements inconsistent with those made at trial. *Cassady* v. *Martin*, 220 Va. 1093, 1099, 266 S.E.2d 104, 107 (1980); *Neblett* v. *Hunter*, 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966). Because Serafin had already testified about a matter which was material when he testified, the bank

had the right to impeach his credibility, even though the issue about which he had testified was no longer material. *See Balto. Ches. & A. R. Co.* v. *Hudgins*, 116 Va. 27, 31-32, 81 S.E. 48, 49 (1914); *Forde* v. *Commonwealth*, 57 Va. (16 Gratt.) 547, 559 (1864); *cf. Hemming* v. *Hutchinson*, 221 Va. 1143, 1146, 277 S.E.2d 230, 233 (1981).

We find no error in the admission of Crown's testimony.

■ (3) Avocet and Serafin complain that the trial court should have permitted them to recall a bank's witness for further cross-examination to establish additional facts developed in a telephone conversation between Avocet's counsel and the bank's witness after that witness had left the stand. A trial court exercises discretion in deciding whether to permit the recall of witnesses for further examination. *Howel* v. *Commonwealth*, 46 Va. (5 Gratt.) 664 (1848). We find no abuse of discretion in the trial court's ruling that Avocet and Serafin could have developed this additional information during the prior cross-examination.

■ (4) Avocet and Serafin contend the trial court erred in excluding evidence of self-dealing among officers and directors of the bank. Avocet and Serafin claim this evidence would have established the background for "the bank's acquiesc[ence]" in releasing the collateral security and the requirement of Serafin's personal endorsement. This evidence had only a remote relation to those issues, and the trial court properly excluded it.

(5) We will not consider a number of other assignments of error dealing with evidentiary questions because of Rule 5:25 violations.

## (C) *Instructions*

Initially, the plaintiff tendered 102 instructions and the defendant tendered 39 instructions, for a total of 141. The trial court reduced the number to be considered to 65 and, of those, granted 43.

We have discussed Instructions R1 and Z5 earlier in this opinion. We will consider only those refused instructions Avocet and Serafin argued in their brief. *See* Rule 5:27(e). We find no prejudicial error in the refusal of these instructions for the reasons which follow.

■ Refused Instructions C, D, E, F and G all referred to basic contract principles dealing with offer and acceptance. We find there was no dispute about those principles necessitating the in-

structions. The issue was whether the bank had agreed to release the requirement of Serafin's endorsement and the pledge of the savings accounts. Instruction 02, which Avocet and Serafin tendered and the trial court granted, fully covered that issue.

Avocet and Serafin indicated Instruction H stated a basic element of contract law. It told the jury ambiguities in a contract are construed against the scrivener. The principle is not applicable in this case; there was no issue of ambiguity, only whether the parties had agreed to a later modification of the terms of the notes.

Refused Instruction N misstated the law. It told the jury that if the alteration of the note was unauthorized it was fraudulent and discharged the makers of the note from further liability. The Official Comment to Code § 8.3-407, which Avocet and Serafin cite as authority for this instruction, points out: "A material alteration does not discharge any party unless it is made for a fraudulent purpose. There is no discharge where a blank is filled in the honest belief that it is as authorized."

Avocet and Serafin assign error to the trial court's granting of a number of the bank's instructions over their objections.[4] We have reviewed each of these instructions to which Avocet and Serafin noted a contemporaneous objection with reasonable certainty and find no prejudicial error in the refusal of any of them. On appeal, Avocet and Serafin assign new grounds for their objections to a number of other instructions, which we will not now consider. Rule 5:25; *Whitley* v. *Patterson*, 204 Va. 36, 40, 129 S.E.2d 19, 22 (1963).[5]

---

[4] One assignment of error dealing with alleged error in the granting of certain of the bank's instructions contains a statement that the trial court erred "in refusing to give Plaintiff's [the bank's] instruction on apparent authority." No number is assigned to the instruction, and we find no discussion in the record showing an objection by Serafin and Avocet to the refusal of the trial court to grant one of the *bank's* tendered instructions.

[5] Two assignments of error deal with instructions which told the jury if the bank "did not intentionally give up" its rights to Serafin's personal endorsements, the jury should find against Serafin on his defense of waiver and release of his personal endorsements.

At the time the instructions were discussed, counsel for Serafin merely said the two instructions were not necessary. Even if we construed this as an objection, the grounds assigned in the trial court were not the same as those asserted on appeal. We made it plain in *Whitley*, 204 Va. at 40, 129 S.E.2d at 22, that no ground for an objection will be considered by this Court which was not assigned in the trial court.

**(D)** *Error Not Argued on Briefs*

 Avocet and Serafin have failed to discuss eight instructions dealing with fraud, as well as assignments of error concerning, *inter alia*, the award of attorney's fees on the notes in question and the award of attorney's fees and expenses incurred by the bank in connection with the taking of a deposition. We do not consider matters not addressed on brief. *See* Rule 5:27(e). Accordingly, we will affirm the trial court's action with respect to these matters.

We will also affirm the judgment against Avocet and Serafin on the notes, and for compensatory and punitive damages for the conversion of the security.

*Affirmed.*