16 F.3d 414
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Eleanor WEINBERGER, Plaintiff-Appellant,
v.
MCI TELECOMMUNICATIONS CORPORATION, a Delaware Corporation;
Patricia Flaherty; Gordon Gray; Henry Wittman;
William Coleman, III, Defendants-Appellees.
 No. 92-2550.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Decided Jan. 25, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge.
 Alan Jay Cilman, Alexandria, VA, for appellant.
 Frank Charles Morris, Jr., Epstein Becker & Green, P.C., Washington, DC, for appellees.
 Thomas R. Bagby, Epstein, Becker & Green, P.C., Washington, DC, Gloria Lett, MCI Telecommunications Corp., Washington, DC, for appellees.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Eleanor Weinberger brought suit against MCI Communications Corp. alleging wrongful termination. Weinberger claimed her dismissal constituted gender-based discrimination and was in retaliation for complaints she made to the Equal Employment Opportunity Commission and within MCI. The district court granted MCI's motion for summary judgment as to Counts I and II of Weinberger's action finding them barred by res judicata. It granted the motion as to the remaining two counts finding that they failed to state a claim upon which relief may be granted. Assuming without deciding that the dismissal of Counts I and II on res judicata grounds was improper, we nonetheless affirm summary judgment in favor of MCI on all counts because Weinberger has not stated a claim upon which relief may be granted under Virginia law. I. Weinberger is a resident of the state of Maryland. MCI is a Delaware corporation. Weinberger began working for MCI in May 1983. At that time, she received a handbook and was told that both MCI and its employees were bound by the handbook. The handbook described MCI's "open door" policy as follows: We encourage you to talk with your supervisor and share other problems that may be affecting you.... When [discussion with the immediate supervisor] does not work to your satisfaction, you may want to take your problem to the next higher level of supervision to discuss the matter in an attempt to resolve the dispute.... You have the right to request and receive assistance from any other level of management or the Human Resources Department. Expressing your concern under the "open door" policy will not prejudice your standing with the Company in any way. The stated purpose of the open door policy was to foster cooperation and communication between the various levels of employees and thus avoid the need for labor unions. Elsewhere, the MCI handbook states that handbooks are "not intended to create an employment contract or term of employment or to set legal limits upon MCI in its relationship with its employees or the termination of that relationship" and that MCI policies "may be changed from time to time without notice or may in some circumstances be disregarded by management." Weinberger denies that the handbook she was given, which had an effective date subsequent to her hiring, contained these disclaimers. In 1987 and 1988, Weinberger signed stock option agreements that stated her employment with MCI was at will and could be terminated "at any time for any reason." In the summer of 1988, MCI hired Patricia Flaherty as Weinberger's supervisor. Shortly thereafter and in the presence of Weinberger's coworkers, Flaherty falsely accused Weinberger of having sexual relations with MCI customers. Later, Flaherty told Weinberger that a customer who complained about Weinberger was probably the only customer with whom Weinberger refused to have sex. Weinberger requested a meeting with Gordon Gray, a vice president of MCI, to complain about Flaherty's behavior. Weinberger specifically requested that the meeting be under the open door policy. Gray agreed. When they met, however, Gray was unreceptive to Weinberger's concerns and complained that Weinberger was wasting his time.
 
 
 2
 After her meeting with Gray, Weinberger told MCI's Human Resources Department that she was going to file a complaint with the EEOC. In September 1988, Joe Brumbry of MCI's Human Resources Department met with Weinberger to discuss her problems with Flaherty. Brumbry later told Weinberger that although Flaherty had admitted making the statements, Weinberger should nonetheless apologize to Flaherty because the complaint would harm Flaherty's career. In mid-October 1988, Weinberger was terminated. Gray told Weinberger she was being fired because she refused to apologize to Flaherty and was not a team player.
 
 
 3
 Weinberger originally filed suit pro se in federal district court for the Eastern District of Virginia challenging her termination by MCI. Count I of the complaint claimed discriminatory employment practices, including discharge based on sexual discrimination, in violation of Title VII and state law. Count II claimed termination in retaliation for Weinberger's EEOC complaint, also in violation of Title VII and state law. Count IV claimed Weinberger's termination was in retaliation for Weinberger's internal complaints and thus was contrary to MCI's open door policy, a contract created by Gray's agreement to meet under the open door policy, and principles of promissory estoppel. The complaint also contained two other counts not relevant here. In September 1989, the district judge dismissed Weinberger's Title VII claims with prejudice and her state law claims without prejudice.
 
 
 4
 In 1991, Weinberger commenced the present action in the Circuit Court for Montgomery County, Virginia. Counts I and II of this complaint were virtually identical to Counts I and II in Weinberger's prior complaint except all references to Title VII were omitted. Count III alleged that MCI terminated Weinberger in retaliation for her complaint to MCI's Human Resources Department in violation of MCI policies and practices. As in the prior action, Count IV claimed wrongful termination in retaliation for Weinberger's complaints to Gray and MCI's Human Resources Department in violation of the open door policy, the alleged oral contract, and the doctrine of promissory estoppel.
 
 
 5
 MCI removed the case to the United States District Court for the District of Maryland, and it was thereafter transferred to the Eastern District of Virginia. MCI moved for dismissal or, alternatively, for summary judgment. The district court granted MCI summary judgment as to all counts, finding that Counts I and II were barred under res judicata because they were dismissed with prejudice in Weinberger's prior suit, and Counts III and IV failed because Weinberger did not establish an exception to at will employment or the existence of a contract cause of action.
 
 II.
 
 6
 This court reviews a district court's grant of summary judgment de novo. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874 (4th Cir.1992). Summary judgment is proper if there are no material factual issues and the movant is entitled to judgment as a matter of law. Id. All evidence must be viewed in the light most favorable to the non-movant. Id. at 875.
 
 
 7
 Once a case is removed to federal court, federal law governs procedural matters as if the case were originally brought in federal court. Granny Goose Foods, Inc. v. Local No. 70, Int'l Bhd. of Teamsters, 415 U.S. 423, 438 (1974). In a diversity case, the choice of law provisions of the state in which the suit originated applies, even if the action is later transferred to another venue. Ferens v. John Deere Co., 494 U.S. 516, 531 (1990). Under Maryland choice of law rules, Virginia law governs both contractual and tort aspects of Weinberger's claims. Ward v. Nationwide Ins. Co., 614 A.2d 85, 88 (Md.1992) (law of state where contract was made controls); Hauch v. Connor, 453 A.2d 1207, 1209 (Md.1983) (tort law of state where wrong occurred governs).
 
 III.
 
 8
 In Virginia, employment at will is presumed. Miller v. SEVAMP, Inc., 362 S.E.2d 915, 917 (Va.1987). This presumption can be rebutted by evidence showing employment was for a fixed period. Progress Printing Co. v. Nichols, 421 S.E.2d 428, 429 (Va.1992). In addition, employment at will does not apply if the termination would violate established public policy. Bowman v. State Bank of Keysville, 331 S.E.2d 797, 798 (Va.1985). There is no general tort of wrongful discharge under Virginia law. Miller v. SEVAMP, 362 S.E.2d at 918.
 
 
 9
 Virginia's Fair Employment Contracting Act states that discriminatory employment practices by the Commonwealth or its contractors are against the policy of the Commonwealth. Va.Code Ann. Sec. 2.1374 (1987). Weinberger argues that this statement creates a public policy exception to at will employment, and that her termination violated this policy because it constituted gender-based discrimination and was in retaliation for her EEOC complaint.
 
 
 10
 Under the public policy exception, a firing may be tortious if "the employer ha[s] misused its freedom to terminate the services of at-will employees in order to subvert a right guaranteed ... by statute." Miller v. SEVAMP, 362 S.E.2d at 918 (emphasis supplied). The Fair Employment Contracting Act does not expressly provide for a cause of action to enforce its provisions, and the Virginia courts have not implied one. Thus, rather than creating a right, the Act makes a statement of policy. The Act does not create a public policy exception to at will employment under Virginia case law, and Weinberger has no valid claim under the Act.
 
 
 11
 Weinberger's claims that she was terminated in retaliation for complaining to the Human Resources Department and for using the open door policy also fail to establish a public policy exception. The public policy exception encompasses only public rights granted by existing law, not private rights. Id. For example, a public policy exception was established when employees, who were also shareholders of the defendant corporation, were discharged in retaliation for exercising their statutorily conferred rights to vote as shareholders. Bowman v. State Bank of Keysville, 331 S.E.2d at 801. Although Weinberger's termination may have been contrary to MCI policy in some respects, it had "no impact upon any public policy established by existing laws for the protection of the public generally." Miller v. SEVAMP, 362 S.E.2d at 919. The only rights which could have been violated by Weinberger's termination are private rights granted, if at all, by MCI's internal documents.
 
 IV.
 
 12
 Although Weinberger concedes in her brief that she was an employee at will, she argues that MCI's employee handbook prevents MCI from terminating her in retaliation for using the open door policy. Employment at will is characterized by the employer's right to terminate employees for any reason. Progress Printing Co. v. Nichols, 421 S.E.2d 428, 429 (Va.1992). Weinberger's argument is thus weakened from the outset by its internal inconsistency, but even if this contradiction is disregarded, Weinberger's argument is unpersuasive.
 
 
 13
 When a handbook expressly states that employees may be terminated without cause, an argument to the contrary based on other statements in the handbook is precluded. Graham v. Cent. Fidelity Bank, 428 S.E.2d 916, 918 (Va.1993). MCI policy provides that employee handbooks do not create an employment contract or limit MCI's termination rights and that policies described in the handbook are subject to change and can in some instances be disregarded. Weinberger insists that these disclaimers were not included in the handbook she was given, but she did receive notice of her at will status by signing the stock option agreements. Regardless of whether the disclaimers were communicated to Weinberger in the handbook, MCI's statements regarding its open door policy are insufficient to rebut the presumption of at will employment. MCI's statement that employees would not prejudice their standing by using the open door policy does not rise to the level of the express termination for cause requirements and detailed termination procedures which have been held sufficient under Virginia law to negate at will employment or raise a triable issue as to rebuttal of the presumption.[1]
 
 
 14
 Any claim that MCI's statements as to use of the open door policy operated as a change from at will employment is counteracted by the stock option agreement.
 
 
 15
 Gray's agreement to meet with Weinberger pursuant to the open door policy was not sufficient to demonstrate a contractual departure from employment at will. The claim of an oral contract resulting from this meeting would be contrary to the statute of frauds. See Progress Printing, 421 S.E.2d at 430 (termination for cause provision must comply with statute of frauds to effectively rebut presumption of employment at will).
 
 V.
 
 16
 The Fair Employment Contracting Act mandates inclusion of a nondiscrimination clause in all Commonwealth contracts exceeding $10,000. Va.Code Ann. Sec. 2.1-376 (1987). Relying on this statutory requirement, Weinberger argues that she has a right of action as a third-party beneficiary of any contracts between MCI and Virginia.[2] Our refusal to imply a private right of action based on the Virginia Fair Contracting Act refutes this argument as well.
 
 VI.
 
 17
 Finally, Weinberger argues that MCI is estopped by its statements in the handbook from firing her in retaliation for her complaints to the EEOC and MCI's Human Resources Department. Estoppel requires a representation by one party and a detrimental change in position by another party in reliance on that representation. Lataif v. Commercial Indus. Corp., 286 S.E.2d 159, 161 (Va.1982). Weinberger's asserted reliance on the open door policy as a change of at will employment was unreasonable because of the clear language in the stock option agreements that she was an at will employee. The Virginia Supreme Court has never stated that reasonable reliance is an essential element of estoppel, but it has found the absence of a showing that reliance was reasonable as a justification for affirming a trial court's refusal to instruct on estoppel. Sachs v. Hoffman, 299 S.E.2d 694, 698 (Va.1983). This court, applying Virginia law, has also rejected a claim of estoppel when the statement on which the estoppel was based did not justify reasonable reliance. Lawrence v. Mars, Inc., 955 F.2d 902, 907 (4th Cir.), cert. denied, 113 S.Ct. 76 (1992). The Virginia court requires the party asserting estoppel to be ignorant of the true state of facts. Avocet Dev. Corp. v. McLean Bank, 364 S.E.2d 757, 762 (Va.1988); Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 266 S.E.2d 887, 890 (Va.1980). Having signed the stock option agreements, Weinberger cannot claim she was unaware that she was an at will employee.
 
 
 18
 For the reasons stated herein, the district court is affirmed.
 
 
 
 [1]
 See Seabolt v. Westmoreland Coal Co., 703 F.Supp. 1235 (W.D. Va.1989), aff'd sub nom. Allman v. Westmoreland Coal Co., 898 F.2d 144, cert. denied, 498 U.S. 848 (1990); Thompson v. Kings Entertainment Co., 674 F.Supp. 1194 (E.D. Va.1987); Thompson v. Am. Motor Inns, Inc., 623 F.Supp. 409 (W.D. Va.1985); Barger v. Gen. Elec. Co., 599 F.Supp. 1154 (W.D. Va.1984); Frazier v. Colonial Williamsburg Found., 574 F.Supp. 318 (E.D. Va.1983)
 
 
 [2]
 Implicit in this argument is the assumption that Virginia and MCI have a contractual relationship. We accept this as true for the purpose of this discussion