# George L. Gullette

## V.

# Federal Deposit Insurance Corporation

Record No. 830681

June 13, 1986

Present: All the Justices

George E. Marzloff for appellant.
James S. G. Turner for appellee.

THOMAS, J., delivered the opinion of the Court.

The issue in this appeal is whether there was a novation of a note executed by George L. Gullette in 1979 resulting in Gullette's release from liability on that note. The trial court held that a novation was not established. We agree.

On January 23, 1979, Tom L. Barrow and Gullette, trading as B & G Investors, executed a promissory note payable to Aquia Bank and Trust Company in the amount of $40,000 (the 1979 Note). The 1979 Note was at a 12% interest rate and was payable within 180 days. The 1979 Note made reference to a Guarantee Agreement which was executed by Barrow and Gullette contemporaneously with the note. The 1979 Note also made reference to two previous notes of $20,000 each and represented the combination of those previous notes into one note. At the time of trial, the 1979 Note had been stamped "PAID BY RENEWAL."

On January 9, 1980, Tom L. Barrow, Jean G. Barrow, and Roland M. Riddell executed a $21,000 note with Aquia Bank (the 1980 Note or the New Note). According to language on the face of the 1980 Note, the purpose of this loan was to "restructure 40m Debt — B & G Investors." The 1980 Note differed from the 1979 Note in several particulars: Gullette was not a party to the 1980 Note; the New Note extended additional credit; it was secured by additional collateral; it had a longer repayment term; and it referred to the "Loan Proceeds" of $20,000.

The 1980 Note went into default. Aquia Bank demanded payment from Gullette on the 1979 Note. Gullette contended he was not liable on the ground that the 1980 Note was a novation which extinguished his liability under the 1979 Note.

Aquia Bank sued Gullette on the 1979 Note.* At trial, the Federal Deposit Insurance Corporation (FDIC) proved the following facts: That the balance on the 1979 Note as of January 9, 1980, was $21,000; that interest was due from that date; and that the FDIC had incurred attorneys' fees of $1,462.50 in its effort to collect on the note. Further, it was proved that the records of Aquia Bank listed the 1980 Note as a "renewal" of the 1979 Note and showed the amount of the renewal as $21,000. In addition, the FDIC introduced the guaranty signed by Gullette and showed that he had not made payments on either the 1979 Note or the 1980 Note. It was also shown that all payments on the 1979 Note were made by Tom Barrow.

Gullette was the sole witness to testify on his behalf. He denied owing Aquia Bank any money. He then attempted to testify concerning his relationship with B & G Investors. The FDIC objected to the testimony on the ground that it was irrelevant and immaterial to the issues joined in the case. The trial court sustained the objection. Thereafter, Gullette proffered a document which concerned Gullette's sale of his one-half partnership interest in B & G Investors to one Roland Riddell. Gullette then rested his case.

Upon consideration of evidence, the trial court made the following ruling:

> I don't have before me any evidence of any intention by the Aquia Bank to discharge the forty thousand dollar note.
>
> I don't have any evidence of the bank agreeing to release Mr. Gullette in exchange for Mr. Riddell's liability. The stamp, paid by renewal, was not signed or initialed by anyone at the bank. It's ambiguous. I don't know who wrote the language that's been referred to on the twenty-one thousand dollar Note. But however that may be, the evidence falls far short of showing a novation or an intent on the part of the bank to discharge Mr. Gullette.
>
> Therefore, his liability continues.

In this appeal, Gullette makes three assignments of error, which can be paraphrased as follows:

*Aquia Bank was the original plaintiff in this matter. However, during the pendency of this proceeding the bank went into receivership and the Federal Deposit Insurance Corporation was substituted as plaintiff.

1. That the trial court erred in failing to find that the 1980 Note was a novation of the 1979 debt which discharged Gullette from all liability under the 1979 Note;

2. That the trial court erred in failing to find that the 1979 Note was intentionally cancelled when stamped "PAID BY RENEWAL;" and

3. That the trial court erred in refusing to admit evidence of Gullette's 1979 sale of his partnership interest in B & G Investors to Riddell.

A novation is never presumed. The burden of proof was upon Gullette to establish by clear and satisfactory evidence that there existed on the part of all parties involved in the subject transactions the clear and definite intention to effect a novation of the 1979 Note. *See Dere* v. *Montgomery Ward*, 224 Va. 277, 280, 295 S.E.2d 794, 795 (1982); *Honeywell* v. *Elliott*, 213 Va. 86, 89, 189 S.E.2d 331, 334 (1972). Moreover, "[i]n the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness; such new evidence, in the absence of an intention expressed or implied, being treated as a conditional payment merely." *Fidelity L. & T. Co.* v. *Engleby*, 99 Va. 168, 171, 37 S.E. 957, 958 (1901). Gullette's evidence fails to satisfy his burden of proof.

Gullette argues that the fact the 1979 Note was stamped "PAID BY RENEWAL," considered in context with language in the 1980 Note, establishes circumstantially the requisite proof of a novation. In essence, Gullette submits that a change in terms from one note to another establishes a novation. Put another way, he argues that there cannot be a renewal unless the obligations from one note to another remain the same. He then reasons that because the 1980 Note could not be a renewal, it must be a novation.

We disagree with Gullette. The law of Virginia is plain that a note, though changed in terms, can, nevertheless, be a renewal of a previous note. *See Engleby*, 99 Va. at 175, 37 S.E. at 960; *Barnetts* v. *Miller's Adm'r*, 64 Va. (23 Gratt.) 551 (1873). In *Engleby*, it was contended that changes in the security for a debt established a novation. We rejected that approach, writing as follows on the subject:

> It is true, as contended, that the record discloses that the securities given for the debt in question were changed; that the endorsers of the original notes became the principals in the succeeding notes given in renewal; that the Cloverdale Farming and Mineral Company became party to the notes in the place of the Cloverdale Iron and Land Company, and that the old notes were surrendered and stamped paid by appellant. These changes, however, appear to have been a mere shifting of securities, more nominal than real.

99 Va. at 175, 37 S.E. at 960. We next explained in *Engleby* that the evidence suggested that the companies which were parties to the separate notes were the same. Yet, we went on to point out that even if that were not true, it would not affect our conclusion that there was no novation. We wrote, "If, however, these two companies were not in fact the same, under the authorities cited, and in view of the other evidence in the case, *the changes relied on would be regarded as a mere shifting of securities*, and not sufficient to show a novation of the debt." *Id.* at 175-76, 37 S.E. at 960 (emphasis added).

In *Moses* v. *Trice*, 62 Va. (21 Gratt.) 556 (1871), we discussed the effect of a renewal of a note upon the original debt. We wrote as follows on that issue:

> Upon familiar principles, *if a note is taken as a conditional payment, or in renewal, and is not duly paid or discharged, the original debt revives*; and this principle applies to every renewal, which is but a continuation of the same debt. Nor is it material whether the note or bill be given for a precedent or contemporary debt; in neither instance will it operate as an extinguishment or payment, unless it be so accepted by the creditor. *If not paid at maturity, the creditor may sue upon it, or upon the original cause of action.*

*Id.* at 567-68 (emphasis added). Gullette cites foreign authority which suggests that a change in a note amounts to a novation. But Virginia law is controlling and leaves no doubt that on the facts of this case Gullette failed to prove a novation.

█ Gullette also contends that the 1979 Note was cancelled when it was stamped "PAID BY RENEWAL." In making this argument he relies on Code § 8.3-605(1) which provides as follows:

The holder of an instrument may even without consideration discharge any party

(a) *in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature*; or

(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

(Emphasis added.) This code section is of no avail to Gullette because its requirements were not met. Official Comment 1 to this provision states that the methods set forth in the statute are exclusive. Here the instrument was not marked "cancelled," nor was Gullette's signature destroyed or mutilated. Nor was subsection (b) complied with: Aquia Bank neither renounced its rights in writing nor surrendered the note.

■ Viewing the cancellation issue on the basis of case law, it is also clear that the 1979 Note was not cancelled by the stamp "PAID BY RENEWAL." In *Engleby*, the original notes had been marked "paid," *and* they had been surrendered. Nevertheless, we held that they were not cancelled. We wrote as follows:

The fact that the word "Paid" was stamped on the old notes, when surrendered, is not, standing alone, a controlling circumstance, especially when, as in this case, it is shown to be the custom of the bank to stamp the word "Paid" on the old note when a new note is given for the debt.

99 Va. at 176, 37 S.E. at 960. It is clear to us that if a note is marked "paid," then surrendered, and yet those facts do not by themselves establish cancellation, then neither can cancellation be established because a note is marked "PAID BY RENEWAL," then retained. This view is bolstered by the legal principle, stated above, that a renewal note is deemed nothing more than a conditional payment. Thus, when fairly read, "paid by renewal" must mean "paid conditionally."

■ Gullette's final contention is that the trial court should have admitted evidence of his agreement with Riddell to assume Gullette's liabilities as a partner in B & G Investors. The trial court excluded this evidence on the ground that it had no bearing on

Aquia Bank's intent to accept the 1980 Note as a novation of the 1979 Note. The trial court was clearly correct in its ruling. It makes no difference how many strangers to the 1979 Note agreed to be responsible in Gullette's place unless the Aquia Bank agreed to accept someone else in Gullette's stead. Gullette did not proffer any evidence which even suggested that Aquia Bank had any knowledge of, much less consented to, the substitution of Riddell for Gullette.

For all the foregoing reasons, the judgment of the trial court will be affirmed.

*Affirmed.*