Anne PALLIE, Appellant,

v.

RIGGS NATIONAL BANK, Appellee.

Nos. 95–CV–1818 & 96–CV–1031

District of Columbia Court of Appeals.

Argued June 2, 1997.

Decided July 24, 1997.

Christopher B. Mead, with whom Mark London, Washington, DC, was on the brief, for appellant.

Lawrence J. Gebhardt, with whom Kenneth R. Rhoad, Baltimore, MD, was on the brief, for appellee.

Before FERREN, STEADMAN, and REID, Associate Judges.

FERREN, Associate Judge:

Anne Pallie appeals from a trial court decision that Riggs National Bank had a valid security interest in Pallie's agency accounts maintained at Riggs. She also appeals from a separate trial court order refusing to hold Riggs in contempt for liquidating the accounts despite the automatic stay of the trial court's judgment imposed by court rule. We agree with both trial court decisions and affirm in each appeal.

## I. FACTS

On May 27, 1988, Anne Pallie signed a promissory note for $200,000 in favor of Riggs National Bank. The note was due on August 25, 1988, with interest accruing at the prime rate plus 1.5 percent. The note contained the following description of collateral security:

> All securities, all Federal Reserve Bank Book–Entry Securities, all Negotiable instruments and all other property now in or hereafter acquired by Agency Accounts 016690–01, 016699–01, and 016705–01 created by agreement between the undersigned [Anne Pallie] and the bank.

Pallie contemporaneously signed a "Collateral Security Agreement" ("CSA") granting the bank a security interest in the three numbered agency accounts identified in the note, "in consideration of any and all loans and

financial credits given, continued, or at any time or times in the future to be given, extended or renewed to the borrower by Riggs." The CSA also contained a clause providing that: "The borrower further agrees that the pledge, assignment and security interest created herein shall be governed by the terms of any such note or such pledge agreement...."

Pallie signed a series of new ninety-day notes reflecting the same underlying debt, and containing the same description of collateral and terms, on August 25, 1988, November 23, 1988, December 23, 1988, and January 20, 1989. On April 10, 1989, Pallie signed a demand note which in other respects was identical to its predecessors. The 1988 notes all had a check beside the "Renewal Loan" box in the top, right-hand corner of the note; the two 1989 notes had neither that box checked nor the other box checked indicating "Original Loan."

In January 1991, Pallie received a call from Sandra O'Lone, who identified herself as Pallie's new loan officer at Riggs. O'Lone told Pallie that the loan was delinquent—Pallie was behind in her interest payments—and that the bank was demanding payment of the entire loan, plus accumulated interest. According to Pallie, O'Lone said that the bank was under increasing regulatory scrutiny and did not want to renew the real estate related loan. Pallie told O'Lone that she did not have the money to pay off the loan. O'Lone asked whether Pallie could bring the interest current, and Pallie replied that she could. O'Lone said that if the interest payments were brought up to date, she would talk to her superiors about renewing the loan. Pallie remitted the interest payments in late January, and in April 1991 she received a new note from Riggs. The trial judge credited Pallie's testimony that she had signed and returned this note in April 1991. Riggs was unable to locate a copy of this note in its files and denied its existence. Pallie, however, introduced in evidence a copy of the front side of the note that, according to her testimony, she had retained when she signed the note and returned it to Riggs.

The 1991 note differed from its predecessors in several respects. While it specified the same principal and interest rate, the note was printed on a "Consumer Note and Loan Agreement" form, whereas the previous notes used Riggs' commercial forms. The 1991 note also contained the following description of collateral:

ALL SECURITIES, ALL FEDERAL RESERVE BANK BOOK ENTRY SECURITIES, ALL NEGOTIABLE INSTRUMENTS AND ALL OTHER PROPERTY NOW IN OR HEREAFTER ACQUIRED BY THE TRUST CREATED UNDER AGREEMENT BETWEEN THE BANK AND THE UNDERSIGNED.

Pallie, however, did not have a trust agreement with Riggs, so this clause described nonexistent property. Pallie also testified that she had no negotiations with O'Lone or with anyone from Riggs concerning the terms of the 1991 note; she simply signed the note when it came in the mail because she was unable to pay off the $200,000 she owed Riggs.

Pallie was unable to make the quarterly interest payment that was due in September 1991. In 1993, Pallie attempted to remove the agency accounts from Riggs, but the bank refused to release them. On August 2, 1993, Riggs filed a complaint against Pallie in Superior Court. As amended, the complaint requested a judgment of $200,000, plus accrued interest, as well as a declaratory judgment that Riggs held a valid security interest in the agency accounts, and that Riggs had acted properly in transferring the property in the agency accounts into a collateral account.

■ Pallie conceded at trial that Riggs was entitled to a judgment of $200,000, plus interest. Pallie argued, however, that the 1991 note had the effect of releasing Riggs' security interest in the agency accounts, and that the description of nonexistent collateral in the 1991 note failed to create any new or ongoing security interest in the agency accounts. The trial court disagreed, concluding that the 1991 note was merely a renewal of the April 1989 note and that Riggs' security interest in the agency accounts was unaffect-

ed by the 1991 note. The court's order, docketed on December 6, 1995, deferred resolution of Riggs' request for attorney fees pursuant to its contract with Pallie.[1] Pallie's appeal from the judgment in favor of Riggs is before us today as No. 95–CV–1818 ("merits appeal").

Less than two weeks later, on or about December 18, 1995, Riggs liquidated the agency accounts and withdrew the $200,000 (plus interest) Pallie owed the bank. On December 28, 1995, Pallie filed an "Expedited Motion to Enforce Stay and for Contempt Sanctions," alleging that Riggs' conduct violated the automatic stay, imposed by Super. Ct. Civ. R. 62(a), prohibiting execution of judgment for ten days.[2] The trial court denied Pallie's motion, concluding that Riggs never had sought to execute the judgment and, therefore, had not violated the stay; instead, the court concluded, Riggs had acted under the auspices of the Uniform Commercial Code, invoking the right to self-help that the UCC grants secured creditors who possess the collateral. Pallie's appeal from the denial of her request for sanctions and enforcement of the stay is before us today as No. 96–CV–1031 ("sanctions appeal").

## II. MERITS APPEAL

■ We consider, first, Pallie's argument that the trial court incorrectly concluded that Riggs had a valid security interest in the agency accounts. The trial court found that the 1991 note amounted to a renewal of the April 1989 note. We see no error in the trial court's analysis. We previously have held that the question whether a renewal note effects a novation or cancellation of the prior note "depends upon the mutual agreement of the parties to that cancellation, for without such a contract there is no discharge of the old notes." *Carter v. Purcellville Nat'l Bank*, 158 A.2d 325, 327 (D.C.Mun. 1960). "[T]he intent of the parties" determines whether such an agreement exists, and

the trial court's determination of intent "is a question of fact." *Purcellville Nat'l Bank v. Carter*, 146 A.2d 206, 208 (D.C.Mun.1958); *see also Mitchell v. David*, 51 A.2d 375, 378 (D.C.Mun.1947) (observing, in analogous context of partial versus total integration of contracts, that "[t]his intent must be sought where always intent must be sought, namely, in the conduct and language of the parties and the surrounding circumstances") (citations omitted). We therefore will reverse only if the trial court's finding was unsupported by the evidence adduced at trial. *See Hagans Mgt. Co. v. Nichols*, 409 A.2d 179, 182 (D.C.1979) (noting that the "clearly erroneous" standard governs appellate review of trial court findings of fact).

■ We note, moreover, that a "novation [or cancellation] is never presumed" and that the "burden of proof was upon [the debtor] to establish by clear and satisfactory evidence that there existed on the part of all parties involved in the subject transaction the clear and definite intention to effect a novation." *Gullette v. Federal Deposit Ins. Corp.*, 231 Va. 486, 344 S.E.2d 920, 922 (1986).

■ The trial court's conclusion that Pallie failed to provide sufficient "convincing evidence that the parties intended the 1991 note to replace all previous agreements" reflects significant support in the record. The 1991 note represented the same underlying indebtedness as the prior notes; Pallie requested an extension when the bank demanded payment on the 1989 note. The court placed significant weight on Pallie's testimony that she never had negotiated any of the terms of the new note, and that she never had discussed with Riggs any release of the previously secured collateral. The misdescription of collateral in the 1991 note also supports the court's finding that the parties had no intention of cancelling all prior agreements and thereby releasing all previously secured collateral. The manifest carelessness in referring to a nonexistent trust ac-

---

1. The pendency of proceedings relating to the award of attorneys' fees does not destroy the finality of the trial court's order for the purpose of determining its appealability. *See Marlyn Condominium, Inc. v. McDowell*, 576 A.2d 1346, 1347 n. 1 (D.C.1990).

2. The ten day period excludes Saturdays and Sundays, so the automatic stay did not expire until December 20. *See* Super. Ct. Civ. R. 6(a) (providing that computation of time periods less than 11 days excludes weekends and legal holidays).

count suggests the parties were extending their previous agreements and not seeking to substitute an entirely new note, with entirely additional collateral.[3] The fact that the bank marked the first five notes "paid" or "paid by renewal" also does not undermine the validity of the trial court's finding that the 1991 note was a renewal note, given the background presumption that a new note is accepted merely as conditional payment for the old note. *See Mid–Eastern Electronics, Inc. v. First Nat'l Bank of Southern Maryland,* 455 F.2d 141, 145 (4th Cir.1970) (concluding that bank's return of notes to debtor did not "rebut the inference that the original indebtedness has not been extinguished" by issuance of new notes, and finding renewal instead of cancellation where new notes related to same underlying indebtedness and debtor never requested filing of termination statement cancelling security agreement); *Gullette,* 344 S.E.2d at 922–23 (concluding debtor failed to provide sufficient evidence of intent to cancel note, even though note was marked "PAID BY RENEWAL," because prior case law had recognized that marking note "PAID" when issuing new note did not effect novation or cancellation). In short, we are unable to classify as clearly erroneous the trial court's finding that Pallie and the bank lacked a mutual intent to cancel all previous agreements.

 Because the 1991 note was merely a renewal of the previous notes, the law provides that the bank's security interest in the agency accounts, as established by the pre–1991 notes and the CSA, was unaffected by the issuance of renewal notes. The original security interest continued without regard to the existence or interpretation of the "future advances" clause in the CSA; we therefore need not interpret the sentence in the CSA

stating "[t]he borrower further agrees that the pledge, assignment and security interest created herein shall be governed by the terms of any such note or such pledge agreement."[4] *See* RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 9–204:99, at 934–35 (3d ed., 1996 rev.) (stating that where creditor provides renewal note, the "security interest given to protect the original debt remains perfected, as against the contention that the original debt is discharged"); *Wolinsky v. Bradford Nat'l Bank,* 34 B.R. 702, 706 (D.Vt.1983) (applying "settled principle that when notes are renewed the collateral which secures the original note also secures the renewals, unless the parties agree otherwise"); *see also Mid–Eastern Electronics, Inc.,* 455 F.2d at 145 (holding that renewals or extensions of underlying obligation did not amount to "future advances and that original security agreement applying to original note remained in force without a future advance clause"); *State Bank of Young America v. Vidmar Iron Works, Inc.,* 292 N.W.2d 244, 248–49 (Minn.1980) (same); *Blue, supra* note 3, 629 P.2d at 792.

## III. SANCTIONS APPEAL

 Super. Ct. Civ. R. 62(a) provides: "[N]o execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Riggs liquidated the agency accounts while the automatic stay was in effect, see *supra* note 1, and Pallie contends this action violated the stay and placed Riggs in contempt of court. We cannot agree. In *Fleming v. Carroll Publishing Co.,* 621 A.2d 829 (D.C.1993), we recognized that it is an open question in the District of

---

3. A change in the terms of a note does not, in and of itself, require a finding that the parties intended a cancellation. Where the debt is refinanced or extended, for example, courts have consistently found a renewal instead of a cancellation. *See, e.g., Blue v. H–K Corp.,* 629 P.2d 790, 792 (Okla.Ct.App.1981) (collecting cases). Even a change in the security for the loan would not compel a finding of cancellation, since the court must look beyond the face of the documents to the surrounding circumstances to determine the intent of the parties. *See, e.g., Purcellville Nat'l Bank,* 146 A.2d at 208.

4. Pallie argues that this sentence means that the language in the 1991 note specifying as collateral the nonexistent trust accounts takes precedence over the CSA's identification of the three numbered agency accounts as collateral for all future loans. Riggs counters that "the phrase certainly does not mean that generalized reference to collateral in a promissory note overrides and negates a specific collateral description in the agreement."

Columbia whether a purportedly secured creditor can simultaneously bring suit against the debtor and exercise its rights to self-help under the Uniform Commercial Code. *See id.* at 834 & n. 9. We do not need to resolve this issue today. Riggs already had physical possession of the accounts when the judgment was entered and never took any action to execute its judgment against Pallie; it never sought to use the judgment, for example, to attach the agency accounts in its possession. *Compare* D.C.Code §§ 16–501 to –556 (1997 Repl.) (establishing procedures for judicial attachment of debtor's property after execution of judgment) *and* Super. Ct. Civ. R. 69 ("Process to enforce a judgment for the payment of money shall be a writ of execution....") *with* D.C.Code § 28:9–504(1), (3) (1996 Repl.) (authorizing secured creditor to sell collateral on default, without judicial process, and without notice to debtor if collateral is of type sold on recognized market). Riggs may (or may not) have been acting improperly or unlawfully by liquidating the collateral accounts while the litigation was proceeding, but for a party to be held in contempt it must violate a court order. Since nothing in the stay imposed by Rule 62(a) addressed the availability of the self-help remedy—a remedy that Pallie could have asked the court to stay pending appeal—Riggs simply did not violate the automatic stay. Pallie remains free to raise the propriety of Riggs' conduct when Riggs seeks to recover its attorneys' fees, and, subject to any applicable statute of limitations, Pallie is free to bring an independent action against Riggs seeking to establish that, in this jurisdiction, secured creditors may not exercise multiple remedies simultaneously. The trial court did not err, however, in refusing Pallie's request to find Riggs in contempt of court.

\* \* \* \* \* \*

For the foregoing reasons, the judgments appealed from are hereby

*Affirmed.*