In re TECHNOLOGIES INTER-
NATIONAL HOLDINGS,
INC., Debtor.

In re Advanced Technologies
International, Inc.,
Debtor.

In re Meridian Transport Co., Debtor.

Nos. 99–50867 to 99–50869.

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

Dec. 28, 2000.

Michael H. Reed, Philadelphia, PA,
Thomas Bunch, Lexington, KY, for debtor.

Lisa P. Sumner, Roanoke, VA, James
W. Gardner, Lexington, KY, for National
Bank of Blacksburg.

### *MEMORANDUM OPINION
AND ORDER*

WILLIAM S. HOWARD, Chief Judge.

This matter is before the Court on the
Debtors' Objection to Claim Nos. 17, 18
and 34 Filed by National Bank of Blacks-
burg, filed herein on August 25, 2000. The

National Bank of Blacksburg ("NBB") filed its Response to Debtors' Objection to Claim Nos. 17, 18 and 34 on September 22, 2000. This matter was heard on September 28, 2000, and taken under submission by Order entered on October 30, 2000. The issues placed before the Court are the liability of debtor Technologies International Holdings, Inc. ("TIH") as guarantor on a note, and whether equitable considerations, including marshaling of assets, require the claimant to seek satisfaction from the principal obligor on the note before turning to the guarantor.

At the hearing on September 28, 2000, the Court ruled that Claim Nos. 17 and 18 should be deleted and that Claim No. 34 should be unsecured. Claim No. 34 shows June 1, 1998 (pre-petition), as the date the debt was incurred. Claim Nos. 17 and 18 showed March 29, 1999 (post-petition) as the date the debt was incurred. Otherwise the proofs of claim were alike in every way. The claim now under consideration, Claim No. 34, shows a total of $206,163.73 owed on account of TIH being guarantor on a note in the name of Biosystems Technology, Inc. ("BTI"). Attached to the proof of claim are copies of notes dated June 1, 1998, and March 29, 1999, and a Guaranty by Corporation ("the Guaranty") dated June 1, 1998. The June 1, 1998 Note ("the Prepetition Note") bears the number 15292–0117 and is stamped "Refinanced." The March 29, 1999 Note ("the Postpetition Note") bears the number 15292–0121 and is also stamped "Refinanced."

The terms of the Guaranty set out that TIH was liable as a guarantor of BTI's indebtedness in the principal amount of $200,000.00 on a promissory note dated June 1, 1998, and "any extensions, renewals or replacements thereof." The Prepetition Note provided for open end credit enabling BTI to borrow up to the maximum principal sum more than once. This open end credit feature was to expire on June 1, 2002. The yearly interest rate was 8.750% on the outstanding principal balance to be paid on the first day of each month beginning July 1, 1998. The purpose of the loan under this Note was "short term working capital requirements." The Postpetition Note provided for a single advance of $203,912.28 with interest at the rate of 9.500% to be paid from March 29, 1999 to July 27, 1999. The purpose of the loan under the Postpetition Note was to "place line of credit # 152920117 on a single pay basis (with this replacement note)."

■ TIH contends that the refinancing of the Prepetition Note paid BTI's indebtedness under that Note in full as a matter of law, thereby discharging TIH's liability under the Guaranty. TIH further contends that the refinancing was not an "extension, renewal or replacement" contemplated by the Guaranty because the terms of the Postpetition Note were "materially different" from the terms of the Prepetition Note. The major difference, according to TIH, is the change from an open end credit arrangement to a four month term loan. TIH further argues that its liability is limited by the terms of the Guaranty to the principal amount, $200,000.00.

■ The Notes and Guaranty being considered here are subject to Virginia law, having been executed in Virginia between Virginia entities (on the Notes). The effect of refinancing must therefore be determined by reference to Virginia law as interpreted by that state's courts. The parties herein both cite *In re Biondo*, 180 F.3d 126 (4th Cir.1999) as being supportive of their respective positions. However, the *Biondo* court was interpreting the phrase "extension, renewal or refinancing of credit" in the context of 11 U.S.C. § 523(a)(2). This Court is not faced with a dischargeability question, and must look at the effect of refinancing a note on the liability on a guaranty.

Virginia courts have addressed the various aspects of this question. In *Gullette v. Federal Deposit Insurance Corporation*, 231 Va. 486, 344 S.E.2d 920, 922–923

(1986), the Supreme Court of Virginia was faced with the issue of whether there was a novation of a 1979 Note executed by Gullette and a business associate of his resulting in Gullette's release from liability on that Note. Gullette had also entered into a Guarantee Agreement on the note. The 1979 Note was stamped "PAID BY RENEWAL." Gullette's associate and two other individuals executed another note with the same bank in 1980. The language on the face of the note indicated that the purpose of the note was to restructure the debt under the 1979 Note.

The 1980 Note differed from the 1979 Note in several respects, including the fact that Gullette was not a party to it, it extended additional credit, it was secured by additional collateral, and it had a longer repayment term. The bank sued Gullette on the 1979 Note, and the trial court ruled that his liability continued. On appeal, the Supreme Court upheld the trial court, stating:

> A novation is never presumed. The burden of proof was upon Gullette to establish by clear and satisfactory evidence that there existed on the part of all parties involved in the subject transaction the clear and definite intention to effect a novation of the 1979 Note.
>
> . . . . . .
>
> Gullette argues that the fact the 1979 Note was stamped "PAID BY RENEWAL," considered in context with the language in the 1980 Note, establishes circumstantially the requisite proof of a novation . . . . . [H]e argues that there cannot be a renewal unless the obligations from one note to another remain the same.
>
> We disagree with Gullette. The law of Virginia is plain that a note, though changed in terms, can, nevertheless, be a renewal of a previous note.

At 922.

The court also rejected Gullette's argument that the 1979 note was cancelled when it was stamped "PAID BY RENEW-

AL." The court pointed out that Gullette had not met the requirements of a Virginia statute providing for the discharge of a party to an instrument by its holder by intentionally cancelling the instrument or the party's signature or by renouncing his rights by a writing. Further, the significance of the stamp "PAID BY RENEWAL" was discounted, the court pointing out that the mere fact that an instrument was stamped "paid" does not, without other evidence, establish cancellation.

This case effectively addresses the arguments made by TIH concerning its liability under the Guaranty at issue here. TIH focused on the change in terms of the Prepetition and Postpetition Notes. The *Gullette* court made it clear that a change in terms will not effect a novation. Pursuant to the holding in *Gullette*, TIH must be considered to be liable under the subject Guaranty.

The Court next considers TIH's contention that it should apply the doctrine of marshaling of assets or some other equitable theory to force NBB to first attempt to recover from BTI under the Postpetition Note. TIH contends that the fact that BTI has never been declared in default, and that NBB would, according to TIH, be in a much better position to recover from BTI than the bankruptcy estate would be provide justification for applying the doctrine of marshaling of assets. In reality, TIH is arguing the "fairness" of the situation it finds itself in.

NBB spends a great deal of time discussing TIH's lack of standing as a secured creditor, which is a prerequisite for the application of marshaling of assets. *See In re Computer Room, Inc.*, 24 B.R. 732, at fn. 5 (Bkrtcy.N.D.Ala.1982). In the Court's view, however, there is a more basic obstacle in the path of application of that, or any other, equitable theory. The Guaranty at issue here is by its terms unconditional and absolute. Further, in ¶ 11 it

waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing indebtedness. The lender shall not be required first to resort for payment of the indebtedness to Borrower or other persons or their properties, or to first enforce, realize upon or exhaust any collateral security for indebtedness, before enforcing this guaranty.

As stated in *Ives v. Williams,* 143 Va. 855, 129 S.E. 675 (1925):

It is well settled in the law of guaranty that when the guarantor enters upon an absolute guaranty, the creditor is under no obligation to first endeavor to collect from the debtor, nor is he under obligation to give notice to the guarantor of default on the part of the primary debtor. When the guaranty is absolute, as in this case, whether the contract of guaranty covers the performance of an act or the payment of money at a definite time, the liability of a guarantor is distinguished from a mere guaranty of solvency or collectibility, which is conditional in its nature or which may arise out of a continuing guaranty.

At 676.

The Guaranty is a contractual obligation, presumably freely entered into by TIH. It is obvious that NBB's claim in this case is perfectly fair and justified under the terms of the Guaranty. Besides, as stated by the court in *Computer Room, supra,* at 737, quoting from *Matter of Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir.1976):

We do not sit as federal chancellors confecting ways to escape the state law of commercial transactions when that law produces a result not to our tastes. Doing what seems fair may be heady stuff ... Today's heady draught may give the majority a euphoric feeling, but it can produce tomorrow's hangover.

This Court likewise finds it unnecessary, if not unwise, to bring equitable considerations into the determination of this matter.

In consideration of all of the foregoing, it is the opinion of this Court that TIH's Objection to Claim No. 34 of National Bank of Blacksburg should be, and hereby is, overruled.