OPINION
This timely appeal arises from an order of the Mahoning County Court of Common Pleas granting summary judgment in favor of William Gross ("Appellee") and holding Kevin Fizet ("Appellant") personally liable for five commercial promissory notes held by Appellee.
This is the second time this matter has been before this Court. On March 31, 1999, we issued an opinion affirming an earlier common pleas decision in part and remanding the matter to the trial court to determine whether and the extent to which Appellant had discharged the debts reflected on five promissory notes held by Appellee. Gross v. Fizet
(March 31, 1999), Mahoning App. No. 98 CA 68, (unreported) ("Gross I").
The facts underpinning this case were detailed at length in this Court's initial opinion. Much of this case's history concerns issues previously addressed and resolved by this Court and they are not pertinent to the instant appeal. Accordingly, the facts of this case are reiterated here only to the extent that they are implicated in the issues we have been asked to address. Based on the record presented, this Court now affirms the trial court's summary judgment order.
In December of 1988, the parties formed a company known as Compost Wholesalers, Inc., making themselves the principal shareholders. Appellant was president and treasurer of the company and oversaw the day-to-day operations of the business. Between December 19, 1988 and October 1, 1990, Appellant executed five promissory notes relevant here to cover operating expenses ("notes A, B, C, D, and E") as follows:
Note Date Face Amount Due Date
A December 19, 1988 $15,000.00 March 19, 1990
B June 18, 1990 $15,000.00 September 17, 1990
C September 10, 1990 $10,000.00 December 10, 1990
D September 17, 1990 $14,850.41 December 17, 1990
E October 1, 1990 $10,000.00 December 21, 1990
(Affidavit of William Gross, Exhibits A-E).
Appellant signed notes A-E, guaranteeing them individually and in his capacity as president of Compost Wholesalers. The notes reflected in Exhibits A, C, D, and E have all been stamped "paid by renewal." Note B lacks such a stamp. According to Appellee, two of the notes received partial payment in the aggregate amount of $4,149.59.
On November 4, 1992, Appellee purchased these notes from the Mahoning National Bank for $20,063.56. (Affidavit William Gross, Exh. G). The bank consequently assigned its interest in the notes to Appellee. (Affidavit William Gross, Exh. H).
On May 19, 1997, Appellee filed an action against Appellant to recover the money he spent purchasing the promissory notes from the bank. Appellee claimed that he was entitled to $20,063.56 plus 8% interest per annum accruing from November of 1992. Appellant answered and countersued seeking reimbursement for business and other financial expenditures. Cross motions for summary judgment were filed and granted and Appellee sought review of the decision in this Court.
On March 31, 1999, this Court entered an order affirming in part and reversing in part the trial court's decision. In so holding, this Court concluded that summary judgment should not have been granted with respect to Appellee's claims on the promissory notes depicted in Exhs. A — E because there existed a genuine issue of material fact with respect to Appellant's continuing liability. Gross I at p. 10. This Court then remanded the matter for the trial court to ascertain whether Appellant could establish that his obligation under the promissory notes had been canceled or otherwise discharged. Id.
On remand, the matter was set for trial and continued several times before Appellee filed a motion for summary judgment which mirrored the one he filed when the matter had last been in the trial court prior to the first appeal. Appellee attached to the motion his affidavit, six promissory notes (only five of which are relevant to this appeal), a copy of his check in the amount of $20,063.56, and a document from the bank assigning its interest in the debt to Appellee. Appellant responded only by arguing that summary judgment was inappropriate in this case and that the matter should go to trial. Appellant failed to attach a single affidavit or exhibit in support of his opposition to summary judgment.
On October 24, 2000, the trial court entered an order sustaining the motion. In so doing, the trial court concluded that, "[Appellant] did not produce any evidence in the response [to Appellee's motion for summary judgment] which would create a genuine issue of fact for trial. Specifically, [Appellant] has not introduced or supplied this Court with any evidence to establish discharge." (Oct. 24, 2000, Judgment Entry). The trial court subsequently ordered Appellant to pay judgment in the amount of $20,063.56 plus 8% interest from November 4, 1992. (Oct. 31, 2000, Judgment Entry).
Appellant filed a notice of appeal from both orders on November 7, 2000.
In his first assignment of error, Appellant maintains that,
 "The trial court erred as a matter of law when it granted summary judgment to Appellee and determined that there was no genuine issue of material fact for trial and that Appellee was entitled to judgment as a matter of law."
Appellant complains that in light of this Court's ruling in Gross I, this matter was not properly disposed of on a motion for summary judgment. In Gross I this Court resolved, among other things, that the words "paid by renewal" did not mean that a debt was discharged unless there was additional evidence to establish that the parties to the transaction intended such a discharge as contemplated under R.C. §1303.69 of the Uniform Commercial Code. Appellant contends that Appellee, therefore, should not have prevailed on a motion for summary judgment in the absence of evidence establishing what the words "paid by renewal" meant in this case. While accurately noting this Court's reasoning in Gross I, Appellant has grossly misconstrued our decision to mean that he was relieved of his obligation to respond to a second motion for summary judgment in the wake of that decision.
This Court subjects the trial court's decision to grant summary judgment to de novo review. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. In other words, this Court applies the same standard on review of a motion for summary judgment as the trial court did when it granted the motion. Lorain National Bank v. SaratogaApartments (1989), 61 Ohio App.3d 127, 129. Summary judgment proceedings are governed by Civ.R. 56. Under Civ.R. 56, summary judgment is appropriate only where the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
Civ.R. 56(C) provides that before summary judgment may be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion, and viewing the evidence most strongly in favor of the non-movant, the conclusion is adverse to that party. Osborne v. Lyles (1992), 63 Ohio St.3d 326, 327, quoting Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Once a motion for summary judgment is introduced and supported in accordance with Civ.R. 56(E), the responding party is obliged to rebut it with, "specific facts showing that there is a genuine issue for trial." Reliance merely upon the pleadings is insufficient when the motion states facts negating an essential element for which the respondent carries the burden of proof. Civ.R. 56(E); Green v. B.F. Goodrich Co. (1993),85 Ohio App.3d 223, 227; citing, Celotex Corp. v. Catrett (1986),477 U.S. 317, 323. Consequently, "a motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial." Wing v. Anchor Media, Ltd. ofTexas (1991), 59 Ohio St.3d 108, 111.
In the instant case, when Appellee filed his summary judgment motion he appended his affidavit and other materials tending to prove that Appellant was indebted to him in the amount of $20,063.56. In response, Appellant merely stated that if the case went to trial he would show that when the bank stamped "paid by renewal" on the promissory notes, it intended to discharge Appellant's debt. (Defendant's Response to Motion for Summary Judgment of Plaintiff, August 28, 2000, at p. 4). But Appellant failed to append even one piece of evidence in that regard. In fact, Appellant failed to support his argument with even his own affidavit to document such a claim.
This case is virtually identical to Mechanics and Farmers Savings Bankv. Smith (1992), Conn. Super. LEXIS 2469. Though clearly not binding on this Court, the case raises questions similar to those presented here. As in the case at bar, the plaintiff in Mechanics and Farmers Bank sought summary judgment in an action to recover funds and interest due pursuant to a promissory note signed by the defendants. In response, the defendants argued that since the notes reflecting their debt were marked "paid by renewal," a genuine issue of fact existed with respect to plaintiff's intent to collect on the debt sufficient to preclude summary judgment. Id. at p. 2.
Noting the complete lack of evidence supporting the factual predicate for defendants' claim, the court granted plaintiff's motion for summary judgment. In so ruling, the court speculated that the defendants' failure to submit an affidavit in support of their defense was, "undoubtably because they [could] not claim in good faith that they either paid the note in question, or signed a renewal not extinguishing their liability with respect to the note in question." Id.
Given that the instant case has the same factual scenario, this Court is inclined to similar speculation. We remanded this matter explicitly to give Appellant the opportunity to demonstrate that his obligation under the notes had been discharged in accordance with Uniform Commercial Code provisions. If the notes had been discharged as Appellant maintains, Appellant was required and should have been able to provide some documentation of that fact. Appellant's failure to provide even an affidavit stating that he or someone else had paid the notes doomed him to failure on summary judgment. See, Uniontown Savings Loan Assoc. v.Enany (1980), 15 Pa. D. C.3d 22 (a party seeking to establish that a renewal note was intended to discharge and to substitute for an earlier note must overcome the presumption that the original note is valid by introducing some evidence of mutual assent to the purported novation).
Appellant also attempts to argue that this Court should reconsider its holding in Gross I. In Gross I, this Court undertook to determine the legal implications of the words "paid by renewal." In that case, Appellant (who was the appellee at the time) insisted that this phrase meant that the debt had been paid. In contrast, Appellee (then the appellant) argued that the phrase only meant that the debt had been renewed. Unfortunately, neither party could muster legal authority to support their respective positions. Since the phrase includes both the words "paid" and "renewal," this Court opined that a reasoned construction of the phrase "paid by renewal" might prove more complicated than that proposed by either party. Gross I, at p. 7.
Prior to Gross I, no Ohio court had defined the phrase "paid by renewal." Accordingly, this Court looked to other jurisdictions for guidance. Relying on a case entitled Gullete v. Federal Deposit InsuranceCorp. (1986), 231 Va. 486, we concluded that the phrase "paid by renewal" could mean both that a note was discharged or that it was simply renewed, depending on other factors. Gross I, at p. 10. This Court also analyzed the phrase in conjunction with the requirements of the Uniform Commercial Code under R.C. § 1303.69, establishing the manner in which obligations are properly discharged. R.C. § 1303.69 provides for the discharge of obligations by cancellation or renunciation as follows:
 "(A) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument in either of the following ways:
 "(1) By surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, the addition of words to the instrument indicating discharge, or any other intentional voluntary act;
 "(2) By agreeing not to sue or otherwise renouncing rights against the party by a signed writing."
After examining the promissory notes involved here, we concluded that the obligations they represented had not been canceled as contemplated by R.C. § 1363.69.
Appellant's entreaties notwithstanding, nothing has occurred sinceGross I to undermine this Court's confidence in the validity of that decision. Moreover, additional research undertaken since Gross I was decided substantiates the conclusions we reached in that case. Under Kentucky law, for example, it has been held that, "a renewal note does not necessarily extinguish an existing obligation . . . The determination of whether a later note is a renewal of an earlier one depends on the intent of the parties." Clare v. First National Bank (In re Cooley) (6th Cir. 1980), 624 F.2d 55, 57. Similarly, in In re McQueen et al.(D.Vt. 1983), 27 B.R. 717, the court noted that even when certain notes had been stamped "paid by renewal," if the bank retains those notes, it evidences an intention to hold them as outstanding until payment of the new note is made. Id. at 722. Under the circumstances, this Court declines Appellant's invitation to revisit its holding in Gross I and Appellant's first assignment of error is overruled.
In his second assignment of error, Appellant maintains as follows:
 "The trial court erred as a matter of law when it permitted Appellee to file a Motion for Summary Judgment without first obtaining prior leave of the Court."
Appellant argues here that the trial court erred when it allowed Appellee to file his motion for summary judgment without prior leave of court. Appellant states that under Civ.R. 56(A), a motion for summary judgment cannot be filed without leave of court once the matter has been set for trial. The record indicates that this matter was set for trial and continued on several occasions. Therefore, Appellant contends, Appellee's motion was not properly filed without leave. According to Appellant, allowing a party to file a motion for summary judgment at any time without leave defeats the reason for having the rule in the first place. This assignment of error simply has no merit.
Appellant correctly notes that Civ.R. 56(B) provides that a party may ask for leave of court when filing a motion for summary judgment after the action has been set for pretrial or trial. Nevertheless, the trial court has discretion to waive this requirement. Indermill v. UnitedSavings (1982), 5 Ohio App.3d 243, 244. Leave of court may be express or implied by the action of the court. Stewart v. Cleveland ClinicFoundation (1999), 136 Ohio App.3d 244, 259. Any claims of abuse of the trial court's discretion for granting leave of court after an action is set for trial must show that the court's order was unreasonable, arbitrary, or capricious. Paramount Supply Co. v. Sherlin Corp. (1984),16 Ohio App.3d 176, 179.
In its order granting summary judgment, the trial court expressly waived the necessity of requesting leave of court. (10/24/2000 Judgment Entry, p. 2). In the absence of evidence to suggest that the trial court's decision allowing Appellant to file his motion without prior leave was unreasonable, arbitrary, or capricious, this assignment of error must be overruled.
In his third assignment of error, Appellant argues that,
 "The trial court erred as a matter of law in the judgment entry of October 31, 2000, when it entered judgment in favor of Appellee in the amount of Twenty Thousand Sixty-Three and 56/100 Dollars ($20,063.56) plus interest at 8% per annum from November 4, 1992."
Appellant maintains that there was no evidence to support Appellant's claim for the monetary damages awarded in this case. Appellant relies onGross I to support his argument that this Court found that he did not owe any monies toward the final promissory note because he did not sign that note in his individual capacity. Appellant states that Appellee failed to introduce any evidence to support his claim that he was entitled to judgment in the amount of $20,063.56, particularly after we absolved Appellant of liability on the sixth promissory note in Gross I.
Once again, Appellant's assignment of error does not have merit. At the outset, this Court notes that Appellant had an opportunity to present evidence in the trial court to rebut Appellee's supported claim that he was entitled to $20,063.56. Appellant inexplicably opted to forego that opportunity. He is, therefore, not in a position now to complain that the amount of the judgment was too high.
In any event, as Appellee points out, the amounts reflected on the five promissory notes attached as Exhibits A — E, far exceed the $20,063.56 that Appellant sought and the trial court awarded. Those notes reflect the following amounts: Note A — $15,000.00; Note B — $15,000.00; Note C — $10,000.00; Note D — $14,850.41; Note E — $10,000.00. Each of those notes was signed by Appellant as an individual. In total they present an aggregate debt of $64,850.41. Appellee presented evidence to the trial court that he was owed $20,063.56. Appellant presented no evidence of any kind. Appellant had a duty to provide at least some evidence to withstand summary judgment, and plainly failed in this regard. Under the circumstances, and given the record now before this Court, the award in this case was entirely proper.
The trial court awarded Appellee judgment based upon the evidence submitted to the court on summary judgment. A judgment rendered by a court of general jurisdiction raises a presumption that the court had before it proper and sufficient evidence to support its judgment.Makranczy v. Gelfand (1924), 109 Ohio St. 325, 335. Our review of the record reflects nothing which would overcome this presumption, nor has Appellant directed this Court to anything in the record pertinent to this issue. Thus, Appellant's third assignment of error is overruled.
As we have overruled all three of Appellant's assignments of error the trial court's decision to grant summary judgment in this case is hereby affirmed.
Donofrio, J., concurs.
Vukovich, P.J., concurs.