## CIRCUIT COURT OF ROANOKE COUNTY

David L. Lemon,
Sheree H. Lemon,
and Lemon Enterprises, Inc.

    v.

Thomas M. Hufford,
Ada D. Hufford,
and Hufford Insurance
and Investment Agency, Inc.

April 19, 2012

Case No. CL07-590

By Judge Robert P. Doherty, Jr.

During the years 2003 and 2004, Defendant Thomas M. Hufford signed a series of unsecured, preprinted, short-term promissory notes, with rates of interest from 10% to 15% *per annum*, when he borrowed money from the Plaintiffs, David and Sheree Lemon and Lemon Enterprises, Inc. He told Plaintiffs that he was using the money for investments, which were doing well, and consequently he did not mind paying interest at the rates they were charging. Besides, the parties were friends, had dinner at each other's home, and Thomas Hufford and David Lemon played golf together. Initially, Hufford promptly paid all of his obligations. After a while, he stopped paying the notes when they came due. To make matters worse, Mr. and Mrs. Lemon lost the original notes.

In order to get themselves back to a firm business footing, Thomas M. Hufford, who said he did not have sufficient funds to pay the lost notes at that time, agreed to have his insurance agency, Hufford Insurance and Investment Agency, Inc., sign two new promissory notes to replace the multiple missing notes that he had previously signed personally. These new notes, which were for a greater principal than the original missing notes,

were treated as payment in full of the principal and interest of the original lost notes, to include the one note to David Lemon's *alter ego*, Lemon Enterprises, Inc.

The new notes were on preprinted forms and prepared by David and Sheree Lemon. The maker of these two new notes was "Hufford Ins. & Inv. Agency Inc.," and they were signed by Thomas M. Hufford, President. The two new notes combined were for approximately $15,000.00 more in principal than were the original notes. This increase in principal was designed to cover the unpaid interest on the original lost notes. No money changed hands when the replacement notes were signed. These two new notes simply paid the antecedent principal and interest debt owed by Thomas M. Hufford on the multiple missing notes. The two replacement notes, one dated September 14, 2005, in the amount of $50,736.00, due and payable to Sheree H. Lemon on April 30, 2007, and bearing interest at the rate of 10% *per annum*, included the original principal of the multiple missing notes and the parties best guess at the interest that should have been earned on those missing notes. The second note, which was payable to David Lemon, was also dated September 14, 2005, and was due on April 30, 2007, in the amount of $70,499.00. It also bore interest at the rate of 10% and was designed to cover the principal and interest of the original missing multiple notes to include the one to Lemon Enterprises, Inc.

The Plaintiffs stated that, when negotiating their new agreement, they were concerned with Hufford's health because he looked sick to them. They asked who would pay the notes if Hufford died or became disabled. Hufford told them that they could contact his wife Ada for payment, as she was vice-president of Hufford Insurance and Investment Agency, Inc. Sheree Lemon then typed a document, which she says was dictated by Hufford, that was signed by Thomas M. Hufford, David L. Lemon, and Sheree H. Lemon and dated September 14, 2005, the same date as the new notes. At a later date, the document was also signed by Ada D. Hufford at the direction of her husband. Copies of the replacement notes were attached as exhibits. The parties agree that this document and the attached copies of the replacement notes constitute all of the terms of their agreement. Plaintiffs claim in their pleadings that this document was a contract that also bound Thomas M. Hufford and Ada D. Hufford, personally, to repay the two replacement notes. Defendant argues that the document was a contract that evidenced the agreement of the parties and explained the reason for the replacement notes. The contract did in fact explain that the new notes from Hufford Insurance and Investment Agency, Inc., Thomas M. Hufford, President, were in full payment of "any previous notes issued to David L. and Sheree H. Lemon. In case of disability or death, Ada D. Hufford, (address and telephone number omitted) should be contacted for payment."

Hufford Insurance and Investment Agency, Inc., did not pay the principal or interest on either of the two notes when they came due on

April 30, 2007. To date, no payments have been made. Plaintiffs filed suit on these obligations. In their amended complaint they alleged that all of the Defendant's breached an express contract. They claimed in the alternative that, if no such express contract existed as to the non-corporate defendants, then Thomas M. Hufford and his wife, Ada D. Hufford, were unjustly enriched at the Plaintiff's expense. Using that theory, Plaintiffs asked that Thomas M. Hufford and Ada D. Hufford be found jointly and severally liable to them and that they be required to repay all of the money that was originally loaned as evidenced by the written notes, together with the bargained for interest.

Thomas Hufford testified that he put the borrowed money into the Hufford Insurance and Investment, Inc., account along with the corporate earnings. He said that he used money from the corporate checking account to pay corporate business expenses and to pay his salary. His salary went into the household checking account that was used by him and his wife, Ada Hufford. Neither Thomas Hufford nor Ada Hufford nor Sheree Lemon nor David Lemon had any idea what, if any, portion of the money originally borrowed went into the Hufford household account. Mrs. Hufford was vice-president of the corporation but had nothing to do with the business, had never written a business check, and did not know anything about her husband's business. She testified that all financial matters were left to her husband.

Ada Hufford said she was not aware of the original loans and only became aware of the new loans to the corporation when she was asked to sign the document evidencing her intent to pay the notes from corporate funds if her husband died or became disabled. She was not aware of the preexisting debts owed by her husband to the Lemons. Sheree Lemon said that neither she nor her husband ever discussed the loans with Ada Hufford. Mrs. Lemon testified that the only reason they had Ada Hufford sign the document was that they wanted her to know that if Thomas Hufford died, Hufford Insurance and Investment Agency, Inc., owed the money to the Lemons. Mr. Lemon testified that the only reason they had Ada Hufford sign the document was so that they had a "go to," to access Hufford Insurance and Investment Agency, Inc., funds, if and when Thomas Hufford died or became disabled. Mrs. Lemon testified that she felt that some of the loaned money could have been used by Ada Hufford or for her benefit but that she had no evidence of that fact, nor did she know how much of the money, if any, was actually used for her benefit. David Lemon testified that although he alleged that some of the money that had been loaned was used for Ada Hufford's benefit, he said he had no evidence to support that.

David Lemons testified that he had loaned the money to Thomas Hufford. He never considered that he was loaning money to the corporation, even though the new replacement notes were signed only by Thomas Hufford in his representative capacity as president of Hufford Insurance and

Investment Agency, Inc., and not by him individually. Thomas Hufford told the Lemons that he would put the borrowed money with other funds to make investments but steadfastly refused to tell them what the investments were. This went on for more than twenty years.

David Lemon owns a furniture store and is a successful independent businessman. He refers to himself as an experienced businessman "in some fields." His current furniture store is the second one he has owned. He has been a self-employed businessman since 1984. Sheree Lemon has been a businesswoman most of her adult life, most recently in outside sales. Both Mr. and Mrs. Lemon testified that they thought Thomas Hufford was investing the borrowed money and, had they known that he was using it for his insurance business, they would not have loaned it to him. They each testified that they thought that they were dealing with Thomas Hufford personally, even though they knew that the replacement notes were signed by him in his representative capacity as president of Hufford Insurance and Investment Agency, Inc. David Lemon testified that, even though the new notes were to replace the old lost notes signed personally by Thomas Hufford, he never marked them paid. This was presumably because the old notes were lost.

After both parties rested the Court granted the motion of Plaintiffs David L. Lemon and Sheree H. Lemon and awarded judgment in their favor and against Hufford Insurance and Investment Agency, Inc., in the full amount of the individual new notes due to each Plaintiff, plus contract interest from the due date of the notes. This judgment was conceded by Defendants. The Court also struck the Defendant Ada D. Hufford from any claim of contractual liability, based upon the concessions by the Plaintiffs and upon their position that they only had her sign the contract so that she would be aware of the notes from Hufford Insurance and Investment Agency, Inc. The Court took under advisement the following questions.

1. Was Thomas M. Hufford personally liable on the underlying debt because of the original notes he had signed?

2. Was Thomas M. Hufford personally liable on the new contract he had signed when the replacement notes were executed only by Hufford Insurance and Investment Agency, Inc.?

3. Were either Thomas M. Hufford or Ada D. Hufford personally liable on the equitable principle of unjust enrichment?

4. Should the corporate veil of Hufford Insurance and Investment Agency, Inc., be pierced and Thomas M. Hufford be found personally liable?

### Novation

What actually happened in this case was that a mutual agreement was entered into among all parties for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of another. There

was a clear and definite intention on the part of all concerned that such was the purpose of the agreement. That is the definition of a novation. See *Dere v. Montgomery Ward and Co*, 224 Va. 277, 280 (1982). The new notes were very clearly not a renewal of old obligations, as argued by Plaintiffs. They were instead a replacement of the old debts with the new obligations. They paid in full the old notes upon which Thomas M. Hufford was personally liable. A new obligor was substituted. The written contract is very clear on that point. No presumption exists to create this novation. The Court is satisfied that Defendants bore their burden of proof, and established by clear, convincing, and satisfactory evidence that there existed on the part of all of the parties involved in the subject transaction the clear and definite intention to effect a novation concerning the original personal notes of Thomas M. Hufford. See *Gullette v. Federal Deposit Ins. Corp.*, 231 Va. 486, 489-90 (1986).

The testimony of the Plaintiffs that they thought they were dealing with Thomas M. Hufford personally is contrary to the written document that they signed. "[A]n individual having the capacity to understand a written document, who signs that document [with or] without reading it, is bound by his signature." *First Va. Bank-Colonial v. Masri*, 245 Va. 461, 463 (1993). The new notes were offered and accepted by the creditor as an extinguishment of the original obligation of Thomas M. Hufford. That is precisely what the written contract states. The Plaintiffs signed that document and are bound by its terms. Thomas M. Hufford is not contractually liable to the Plaintiffs. His original notes were paid in full. They were not rolled over or renewed. The new contract explains that. It does not make Hufford personally liable to Plaintiffs under any theory.

### Unjust Enrichment

Unjust enrichment is an equitable theory under implied or quasi-contract. A contract implied in law, or quasi contract, is imposed by the law and designed to prevent unjust enrichment. It is a legal fiction used when no contract actually exists but when it would be inequitable for someone to receive a benefit from another unjustly. An implied contract will be imposed in the absence of an express contract, when equity and good conscience deem such an agreement should exist. *National R.R. Passenger Corp. v. Catlett Vol. Fire Co.*, 241 Va. 402, 407 (1991). The theory of unjust enrichment only applies in the absence of an express contract. *Ellis & Meyers Lumber Co. v. Hubbard*, 123 Va. 481, 502 (1918). Since a written and therefore express contract existed regarding Thomas M. Hufford, the corporate defendant, and the plaintiffs, no contract implied in law exists as to him. The equitable theory of unjust enrichment, as it applies to Thomas M. Hufford, fails. In addition, his original obligations having been paid in

full by a novation, no theory exists under which he was unjustly enriched. He paid his obligation to the plaintiffs.

A similar argument involving Ada D. Hufford can be made regarding the express contract she signed, even though the Plaintiffs conceded that they did not intend to make her contractually liable under that written agreement. The Defendants also contend that the novation prevents unjust enrichment of the proceeds of the original loans by Ada Hufford, as the original loans were paid in full by the novation. Finally, even though the Plaintiffs testified as to their speculations and beliefs that Ada Hufford knew of the original loans and received some benefit unjustly from them, they admitted that they had no evidence of such knowledge or receipt. Ada Hufford testified that she had no knowledge of the original notes. Plaintiffs fail at their attempt to make Ada D. Hufford liable under the equitable theory of unjust enrichment through an implied contract. "One may not recover under a theory of implied contract simply by showing a benefit to the defendant without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476 (1993). No such implication was raised. Under the facts of this case, Plaintiff did not show a benefit to Ada Hufford. The motion for judgment against Ada D. Hufford under the theory of unjust enrichment is denied for all of the above stated reasons.

### Piercing the Corporate Veil

Plaintiff's argument that the Court should pierce the corporate veil of Hufford Insurance and Investment Agency, Inc., and make Thomas M. Hufford personally liable for the corporation's obligations was not pleaded. It is not an issue in this case. The Court denies Plaintiffs' motion to grant a personal judgment against Thomas M. Hufford on the allegation that he used his corporation as his *alter ego*.

### Conclusion

For the reasons set forth herein, no judgment will be entered against Thomas M. Hufford or Ada D. Hufford. As previously ordered, judgment is granted against Hufford Insurance and Investment Agency, Inc., and in favor of David L. Lemon and Sheree H. Lemon in the full amount of the individual new notes due to each Plaintiff, plus contract interest until paid.